## JOHN G. TEBBETTS & als. *versus* ISRAEL K. ESTES.

Where a road was located in 1798, and, prior to 1814, it was changed by user to a place three rods northerly of the location; and deeds, subsequent to the change, describe land as bounded " *on the road;*" there is no rule of law that applies such words of description in the deeds to *the road as located.*

The question as to the location of the boundary is one of fact.

Where, in the trial of a writ of entry, the plaintiffs' title to the land in question depends upon a levy, a valid judgment must be proved, if the defendant be not a party or privy to it.

And where, in such case, all of the deeds, under or through which, the plaintiffs claim, are merely releases of the interest which releasors had in the land, and it does not appear that any of them were ever in possession, the defendant must prevail, it being alleged in the writ that the defendant is in possession.

Where an administrator obtained a judgment upon a demand belonging to his intestate, and extended the execution upon the land of the judgment debtor, he held the land, under the Public Laws of 1821, c. 52, *in trust*, during the time he was administering.

But it may well be doubted whether his right was not *ad rem*, rather than *in re*, being more in the nature of a lien, than a legal title.

ON REPORT from *Nisi Prius*, WALTON, J., presiding.

WRIT OF ENTRY.

The plaintiffs demanded three-fourths of an acre of land bounded on the north by the "*county road leading from Little River Village, in Lisbon, to Topsham,* &c. ; on the east by "Little River;" on the south by Androscoggin River ;

and on the west by A B's land, &c. (Vide dotted lines on diagram.)

The defendant disclaimed all of the land demanded excepting nine square rods, — A, B, C, D, as represented on the diagram, — his land being bounded on the south by the "*county road leading from Little River*," &c.

It was proved that the "county road leading from Little River Village to Topsham" was located as indicated on the diagram in 1798, and that prior to 1814, the bridge across Little River was carried away by a freshet, and a new one built three rods above the former, "to which the travel gradually accommodated itself."

The plaintiffs' land was bounded northerly by the "county road," and the defendant's southerly by the "county road."

It was agreed that, if the Court found that the plaintiffs are entitled to recover, or that the defendant has occupied the land disclaimed by him, the clerk should assess the damages for rents and profits since June 13, 1862.

All of the remaining material facts sufficiently appear in the opinion of the Court.

*May & May*, for the plaintiffs.

*Luce*, for the defendant.

The opinion of the Court was drawn by

DAVIS, J.—The plaintiffs claim title to the premises in controversy, through mesne conveyances, under a deed from Charles Potter and Parsons Smith, executors of the will of Hezekiah Wyman, dated August 9, 1828. Wyman's title in himself was derived by a partition of the estate of Nathan Wyman, of whom he was one of the heirs, made Dec. 8, 1826. But, it should be noticed here, that if, for any reason, the *partition* was void, Hezekiah Wyman did not thereby lose his *previous* title, if he had any, *as tenant in common with the other heirs*. Did *they* have any title? If so, and the plaintiffs have acquired the title of *one* of them, that is sufficient to enable them to maintain this action, as the defendant does not claim under any of the heirs, and shows no title.

Nathan Wyman, in his lifetime, did not own the premises. The case does not show when he died; but Hezekiah Wyman administered upon his estate, and, as such administrator, obtained an execution against one Ezekiel Thompson, and extended it upon the premises in satisfaction of the judgment, Oct. 2, 1821. The levy appears to have embraced more than the land sued for; but in the levy, as in all the deeds subsequently given, the land is described as bounded at one point "on the road leading to Little River."

It seems that several years before that time the road at this place had been changed, and was not on the line of its location. And it is claimed that the words in the conveyances are to be applied to the road *as located*, and not to the road *as existing*. But there is no such rule of law. The question is one of *intention*. And it is far more reasonable to suppose that the appraisers, in viewing the premises upon

which the execution was to be extended, intended the road as they saw it, then existing, rather than any other road, of which it does not appear that they had any knowledge. And whatever title, if any, passed by the levy, was conveyed in the subsequent deeds. The *location* of the boundary is a question of *fact;* but the evidence leaves no room for doubt in regard to it.

We have already stated that, if the *heirs* of Nathan Wyman acquired a title to the premises, the validity of the *partition* between them is immaterial. For the grantee of any one of them is entitled to possession, as against a stranger, though there was no valid partition.

It is claimed that the levy of the administrator, Hezekiah Wyman, vested the title in *him*, and not in the heirs. Laws of 1821, c. 52, § 16. That he held it, *in trust*, during the time he was administering upon the estate, there is no doubt. But it may well be doubted whether his right was not *ad rem*, rather than *in re*, being more in the nature of a *lien*, than a legal title. In prosecuting the suit, and obtaining satisfaction of the judgment, he was merely *agent* of the *estate*, or of the parties interested in it. Such was the view taken of the statute in *Webber* v. *Webber*, 6 Greenl., 127. If this view is correct, the administrator's *right* expired when his *trust* expired, of which the statute made it an incident.

But a different interpretation appears to have been given in *Furlong* v. *Soule*, 39 Maine, 122. And, as the statute has since been changed, it is not important for us to express any opinion. For there is no evidence that the administrator ever had any valid judgment against Ezekiel Thompson, upon whose estate the execution was extended. And the present defendant, not being a party or privy to that execution, is not bound by it without proof of the judgment. 2 Greenl. Ev., § 316, and cases cited.

If any one of the deeds under or through which the plaintiffs claim had been actual grants of the land, with, or without covenants of warranty, the result might have been dif-

ferent.   But they are all merely *releases* of the *interest which Hezekiah Wyman had in the property*.   It does not appear that any of the parties, under whom the plaintiffs claim, were ever in possession.   They allege in their writ that the defendant was in possession.   Such possession being *prima facie* evidence of title, the plaintiffs must prove a better one, or they cannot recover.   A mere release of the *interest* of one who himself was never in possession, is weaker, instead of being stronger, than the possession of the defendant, and is not sufficient for the maintenance of the action. According to the agreement of the parties, judgment must be rendered for the defendant.

APPLETON, C. J., CUTTING, WALTON, DICKERSON and BARROWS, JJ., concurred.