ANSON W. ALDRICH *vs.* HENRY A. BILLINGS *et als.*

When a street is referred to in a deed as a boundary, the street as opened and actually used, rather than its record lay out, is the boundary intended, especially when the lines of use and lay out nearly coincide.

An estate was platted into lots and partition of it was made by deeds conveying the lots. Certain of these lots bounded on W. Street, and the deeds of these lots contained a provision that "The strip of land situate in front of lot No.   as designated on said plat, which is intended to be used at some future time to widen W. Street, is included in the above conveyance, and may be improved by the grantee until it shall be laid out for a street; but no building can be erected thereon."

*Held,* that this provision created a negative easement restricting the right to build.

A. permitted and advised the erection of buildings on the strip in front of certain of these lots, and several years afterwards filed a bill in equity to enjoin the owners of these buildings from building on the strip in front of another of the lots.

*Held,* that A.'s conduct was a waiver and abandonment by him of the easement.

*Held,* further, that A. was estopped by acquiescence and *laches* from maintaining his bill.

A. alleged that his former action was taken in ignorance of his rights.

*Held,* that as the deeds of the lots in question were duly recorded, and some of them formed links in his own claim of title, his ignorance was attributable to his *laches* and that he was estopped from setting it up.

BILL IN EQUITY for an injunction. The premises in dispute are sketched upon the accompanying plat, and the questions at issue between the litigants are stated in the opinion of the court.

*July* 14, 1883. STINESS, J. Complainant is owner, and defendants owners and lessees, of lots on a plat of land made July 10, 1847, by James Aborn, now deceased. Complainant's lots front on Washington Street, and defendants' lots, adjoining on the rear line, front on Worcester Street, so called, a private way twenty feet wide, as now used.

Division of the estate of James Aborn was made by mutual quitclaim deeds, pursuant to a report of referees, by means of which, and subsequent conveyances, title to lots 11, 12, and 13, on the plat came to the complainant, and title to lots 18, 19, and 20, to the defendants. Complainant also became the owner of lot 21 and a part of 22, adjoining the defendants' land on Worcester Street, all of which was opened as a public highway by the city of Providence, in the extension of Eddy Street, before the filing of this bill. The deeds by which this land was divided describe the lots as bounded on Washington and Worcester streets respectively, and also by their numbers on the plat, on which Worcester Street

· marked out by scale as forty feet wide. This plat was recorded ᴜctober 7, 1847, but another plat of the outlines of the same property was recorded September 21, 1847, on which no lot lines appear, but a dotted line, marked " Proposed line of Worcester Street," on the southerly line of Worcester Street in the other plat, showing a strip of twenty feet, more or less, not included in the street.

The referees, in their report of the division, say : " The strip of land lying in front of lots Nos. 17, 18, 19, 20, 21, 22, and No. 1, as designated on the afore named plat, which is contemplated at some future time to be used to widen ' Worcester Street,' so called, belongs to the above named seven lots, and is to be held by the owners of said lots as tenants in common until occupied as a street as aforesaid, but each individual owner of the land on said ' Worcester Street ' may improve said land in front of his lots without the consent of others until the opening of the same for a street shall be completed, but no building can be erected thereon."

The several deeds recite : " The strip of land situate in front of lot No. , as designated on said plat, which is intended to be used at some future time, to widen Worcester Street, is included in the above conveyance, and may be improved by the grantee until it shall be laid out for a street ; but no building can be erected thereon."

It is to be noticed that the plat referred to in the report and deeds shows no such strip, but that this is shown only on the plat of the outlines of the estate.

Billings Bros., lessees, built a brick building on lots 18 and 19, and the strip in front, several years ago, and as they began to build another brick building on lot 20 and its corresponding strip on Worcester Street, the complainant filed this bill for injunction, claiming an encroachment on his land by the southerly end of the building and his right to the width of forty feet in Worcester Street, both as an owner of land on the street and on the plat.

Two questions are thus presented for decision:

*First.* Do the defendants encroach upon the rear of the complainant's lot ? and,

*Second.* Is the complainant entitled to enjoin their building upon the strip of twenty feet on Worcester Street ?

Plat of the
James Thorn Estate
Laid out and platted July 10 1847
by Cushing & Walling

The answer to the first question is to be found in the measurements of the surveyors, the only difference between them being that of locating the line of Washington Street as a starting point.

This street was laid out by the city in 1820, and the northerly line, between Mathewson Street and the Cove, was defined by reference to four houses. Two of these houses stood a little back from a straight line touching the first and last, which are still standing, so that the line would be slightly " bowing," as witnesses say, if it touched them all. On this account, surveyors summoned by the complainant claim that this line should be rejected because the straight line evidently contemplated is impossible, and that another line parallel to Westminster Street should be adopted as the true line. Other surveyors testify that the divergence from a straight line is no more than would be accounted for by the imperfections of the instruments used at that time, and it further appeared that the line of occupation has substantially corresponded with this line. When a street is referred to as a boundary in a deed, the rule is that the street as it is opened and practically exists, rather than its lay out of record merely, is the boundary intended by the parties. *Tebbetts* v. *Estes*, 52 Me. 566 ; *Falls Village Water Power Co.* v. *Tibbetts*, 31 Conn. 165 ; 3 Washburn Real Property, 361.

In this case the actual and record lines so nearly coincide that there is little room to doubt that the line projected from the first and last of the houses named was taken by the parties to the deeds to be the line of Washington Street. Adopting that as the boundary of the complainant's land, as specified in the deeds to him, we find that there is no encroachment by the defendants on the rear of his lot.

As to the second question, we find that the deeds of partition described the lots as bounded on Worcester Street, and by reference to a plat on which no reservation of the strip of twenty feet appeared. Then followed the clause quoted above, that the strip was included in the conveyance, but not to be built upon, &c. These deeds bear the same date, and are prior to the conveyance to the complainant and to the first purchase of land on Worcester Street.

The effect of the deeds was to convey to the several grantees the strip on Worcester Street in front of their respective lots, not by virtue of the clause referred to, but by reason of the description of the premises granted; subject, however, to the easement of other owners, at least those on the street, to have the strip unincumbered by buildings and ready at any time to be " laid out for a street."

The report of the referees for division, together with the deeds executed pursuant thereto, containing the clause above quoted, and the reservation of the strip on the plat first recorded, show that the parties intended a mutual covenant which is to be construed as the grant of a negative easement in the lands of all, restricting the right to build within the specified limits. *Greene* v. *Creighton*, 7 R. I. 1.

In *Hubbell* v. *Warren*, 8 Allen, 173, the court say : " That an agreement between the owners of adjacent parcels of land, restricting the mode of its use and enjoyment, although not entered into in the form of a covenant or condition, or so framed as to be binding upon heirs or assigns by virtue of privity of estate, may, nevertheless, create a right in the nature of a servitude or easement in the land to which it relates, which can be enforced in equity, is now well settled in this commonwealth," provided it appears that the parties intended to impose a permanent restraint on the use or mode of occupation of their respective estates.

In *Winfield* v. *Henning*, 21 N. J. Eq. 188, 190, where a deed stipulated that houses to be erected should be set back ten feet from the street, the chancellor says : " An action at law could not be maintained by the complainant against the defendant on such covenant.  But in equity their position is different.  Both parties are bound to the grantors in the Coles deed to keep this front free from buildings ; each is subject to the easement over his lot in favor of those subsequently deriving title from Coles ; and each is equitably and justly entitled to the advantage which the observance of this stipulation may be to him."  Citing a *dictum* of Lord Romilly in *Western* v. *Macdermot*, L. R. 1 Eq. 499, 507, and *Greene* v. *Creighton*, *supra*.

The defendants contend that as all the complainant's land fronting on Worcester Street has been declared a public highway by the

city in the opening of Eddy Street, so that his only interest in it at the filing of this bill was such as might result from the abandonment of that street, he sustains no injury sufficient to maintain a bill of this character. We do not need to consider what the complainant's interest may be in the land covered by the highway, because a broader ground of defence involves any rights which he might claim either as an owner on the street or on the plat, claiming damage to his other lots, and is conclusive of both; namely, that he has known, assented to, and advised building on the strips in front of all three lots of the defendants, by reason of which the easement, so far as he is concerned, has been waived and abandoned.

"It is a rule of law that an easement, whether acquired by known grant or by prescription, may be extinguished, renounced, or modified by a parol license granted by the owner of the dominant tenement and executed by the owner of the servient tenement." *Morse* v. *Copeland*, 2 Gray, 302.

The reason for this rule is clearly stated by Shaw, C. J., in *Dyer* v. *Sanford*, 9 Met. 395, 401: "If the owner of the dominant grants a license to the owner of the servient tenement to erect a wall which necessarily obstructs the enjoyment of the easement, and it is erected accordingly, it may amount to proof of an abandonment of the easement. It is not a release because it is by parol. But it results from the consideration that a license, when executed, is not revocable; and if the obstruction be permanent in its nature, it does, *de facto*, terminate the enjoyment of the easement. See, also, *Steere* v. *Tiffany*, 13 R. I. 568; *Vogler* v. *Geiss*, 51 Md. 407.

In the case at bar it appears that several years ago a brick stable was built by the defendant lessees on the strip in front of lots 18 and 19, and a shed in front of lot 20, before it came into their possession; that the complainant knew of these facts, and said to the agent of the property, who applied to him before building, " Go ahead."

Not only do these facts amount to a waiver and abandonment of the easement, but also by reason of the complainant's *laches* and acquiescence he is estopped in equity from now claiming the right to compel the defendants to take down their building and open the street to its full width.

It is familiar law that a party may by *laches* deprive himself of equitable remedy against an injurious act; but when to delay is added acquiescence in the act, inducing large expenditures in consequence, it is too clear for discussion that a court of equity cannot interfere to undo that which a complainant himself has stood by and permitted to be done. *Bankhardt* v. *Houghton*, 27 Beav. 425; Wood on Nuisances, § 796, and cases cited.

In *Arnold* v. *Cornman*, 50 Pa. St. 361, the erection of a wall across a way, known and not objected to by complainant, was held to estop his claiming its removal afterwards for the purpose of opening the way.

The defendants' brick stable has stood for several years over the strip of land on Worcester Street from Union Street to lot 20. The way has been as effectually obstructed as though the building had also extended in front of lot 20, the little corner brought in question by this bill. Even upon this corner, before the defendants began to build, stood a shed; and all this with the knowledge of complainant and without objection on his part. He says he did not object because he did not know of the restrictions in the deeds. But he at least knew that the street was laid out on the plat forty feet wide, and that it would be obstructed with buildings of a permanent character, which was enough to put him upon inquiry. The deeds were all recorded in the city registry, and two of them appear in his own claim of title. It was no fault of the defendants that he did not know about the provisions of the deeds; and in view of the fact that he claims to have bought before anything was built with reference to a street forty feet wide and an increased value on that account, the failure to ascertain the rights appurtenant to his property is but one phase of *laches*. When Billings Bros. hired lot 20, they found the strip in question occupied by a building which had been erected with the express consent of the complainant, and they therefore had the right to suppose that they could occupy it to as full an extent. It is too late now to set them back where they could be without loss. The relief asked for by the complainant cannot be granted without great damage to them, and that from no fault on their part, but from simple reliance on the results of the complainant's acts. If he is entitled now to have a street forty feet wide in front of lot 20, he is

entitled to have it all the way up the street, and thus to compel the removal of buildings erected with his knowledge and assent.

We are of opinion that he is not entitled to the relief prayed for, and the bill must be dismissed.

*Edwin Metcalf & Dexter B. Potter*, for complainant.

*Francis Colwell & Amasa M. Eaton*, for respondents.