## FALLS VILLAGE WATER POWER COMPANY *vs.* LUTHER C. TIBBETTS.

A highway mentioned in a deed as a boundary, must be understood to mean the highway as it practically exists, the apparent and traveled highway, and not the highway as it exists of record merely.

Although a court of equity will not interfere by injunction in favor of a doubtful right, yet where there had been a long undisturbed and exclusive possession, under a deed which was recorded and which the grantee and the other occupants holding under him supposed to convey a title, and the party now disputing the

title was a trespasser, without a color of right, it was held that, even if the deed conveyed no title, yet the title was not so doubtful a one as to make it improper for a court of equity to interfere by injunction in favor of the party holding it.

A party seeking an injunction must show a particular injury distinct from that which he suffers in common with the public.

Where a bill in equity for an injunction alleged that the petitioners were " seized and possessed " of certain land, and that the injuries done and threatened by the respondent would materially lessen *its* value and thereby inflict great loss upon them, it was held that, if this was not a sufficient allegation of ownership, yet that it was merely a defective statement of title, and that where the respondent did not demur, or object to evidence, but treated the bill as based on ownership, and in a special answer put that ownership in issue, he could not, after a decree against him on the facts, take advantage on a motion in error of the want of a more direct averment of title.

BILL for an injunction. Facts specially found and a decree rendered for the petitioners in the superior court, by *Dutton, J.* Motion in error by the respondent. A statement of the case, which could not well be understood without a map, is omitted, as the general principles decided will be sufficiently understood from the opinion of the court.

*Sedgwick,* for the plaintiff in error.

*Hubbard* and *Peet,* for the defendants in error.

BUTLER, J. If it was necessary that the petition should set out a legal title in the petitioners to entitle them to the relief sought, the respondent could not succeed on this motion in error. Whether the words " seized and possessed " import any thing more than a possession, is immaterial. The petitioners also aver as the foundation of their application, that the injuries done and threatened will materially lessen the value of the premises, and thereby inflict great loss upon them. These averments by implication allege ownership, and there is at most a mere defective statement of title. Besides, the respondent did not demur, or raise the question by objecting to the evidence, but treated the application as based on ownership, and in a special answer put that ownership in issue. He must now, and upon this motion, stand upon the facts found under the issue thus made, and the question whether those facts are sufficient to uphold the decree.

Falls Village Water Power Co. *v*. Tibbetts.

The respondent further claims that the facts found do not show such a title as the court should have required to justify their interposition by injunction.

The court found a legal title in the petitioners, predicated however on the construction given to the deed from John Ensign Jr. to Leman Bradley. We think the court was right in that construction. John Ensign senior, the original owner of the whole territory, about the year 1787 threw open to the public the tongue or gore of land between his newly erected dwelling house and the bridge, and the western part of it was immediately occupied by the public as a part of the highway from Sharon to Sheffield, and all travel between those points around by the bridge ceased. The court do not find a dedication by John Ensign senior, nor was it material that they should. But if it had been important, they might well have found it upon the facts; for they indicate with great clearness that such was his intention, and that John Ensign, his son, so understood it. It is found that from the time it was thrown open and occupied by the public, down to and at the date of Ensign's deed to Bradley, there was a road across the tongue or gore, west of the disputed premises, which was a part of the apparent road or highway from Sharon to Sheffield, and would be so understood by any person when the road from Sharon to Sheffield was mentioned. Now a road or highway, mentioned in a deed as a boundary, must be understood to mean, what is meant by other existing objects or monuments described and intended as boundaries, viz., an object existing *in fact*, not of record merely—something *apparent*, unmistakeable and permanent. The origin of a highway which the parties to a deed use as a boundary is immaterial, and it· is not to be supposed that the parties thought of it. In the absence of any evidence to the contrary, they must be presumed to have intended the *then apparent* and traveled, and the only apparent and traveled highway between the points named, *passing* the land ; and not a highway which existed of record, but had long been apparently abandoned by the public, and the existence and former use of which may not have been known to them. This pre-

sumption is strengthened in this case by the subsequent conduct of the parties. Bradley occupied immediately, and after him the petitioners occupied in the most open and exclusive manner, by the erection of a permanent fence and a dwelling house on the premises. Ensign became the owner of his father's homestead on the west, and adjoining the new highway, and he, together with all the other heirs of his father, *acquiesced* in the exclusive enjoyment of the premises in question by Bradley and the petitioners, under their deeds. It is not easy to see how any other construction of the deed can be given, which will satisfy the mind, except that adopted by the court below.

Nor can we say that the court erred in holding that the petitioners would be entitled to the relief sought, if the respondent had succeeded in casting a doubt upon the construction of the Ensign deed. Unquestionably the interference of a court of equity by injunction, in a case of trespass to land, and where an action at law will lie, is of modern origin, and an exercise of power to be justified only in a case of great and irreparable injury. Doubtless too the petitioner who invokes it, in conformity with principle and precedent, should show at least a strong *prima facie* case of a *right*. In the earlier cases the title was not in dispute, and in the later ones, where it has been, and has been doubtful, the court have refused to interfere. In *Roath* v. *Driscoll*, 20 Conn., 533, this court said that they would not interfere where the right was doubtful; and to that principle we adhere. But is the right doubtful here, even assuming that the court erred in the construction of the Ensign deed to Bradley? The possession has been long, and undisturbed, and exclusive, and under a deed.*

* The land in question was a small triangular piece, at a fork of the roads, and until about thirteen years before the suit was brought had been open to the highway. In 1813 Bradley, the grantee under the deed supposed to embrace this piece of land, began to use it, in connection with his iron works near by, as a place for the deposit and weighing of ore and iron, and erected a weighing house on it. This use continued until about the year 1848, when parties holding under Bradley converted the weighing house into a dwelling house, and enclosed the land with a fence; the fence standing until the fall of 1861, when it was removed by the respondent. The suit was brought in November, 1861.     R.

This raises a presumption of ownership which presents a *prima facie* case of right. And who doubts it, or attempts to make it doubtful? No heir of John Ensign senior, or of John Ensign Jr., but a *stranger* to the land and the title—one who is clothed with no right nor any color of right; for no color of title can be had by obtaining a deed, void by the statute against the sale of pretended titles, and apparently obtained for the prohibited and penal purpose of involving the petitioners in litigation. This is not a case then in which there are two claimants to the property, and the title is doubtful as *between them*, but where there is an apparent title in the petitioners, and the respondent is without color of title and a stranger to the property. It is said that he is a representative of the heirs of John Ensign, but the facts found do not show it. They do not show that he acted by their authority; on their responsibility; at their request or direction; nor at their expense, or for their benefit; and leave him a naked wrong doer. It is said he was their representative by virtue of their void deed. But that could not be; the deed had no virtue for any purpose. Against such a trespasser the court might well interfere in favor of those who have had so long, and undisturbed, and exclusive a possession, under a recorded deed embracing the premises and giving a color of title, whether that deed in fact conveyed a title or not.

The respondent is right in his claim, that a *particular* injury must be shown to the petitioners, distinct from that which they suffer in common with the rest of the public; and that such injury must be attended with substantial and serious damage. Such was the rule recognized by this court in *Bigelow* v. *Hartford Bridge Co.*, 14 Conn., 565, cited by the respondent. But the finding of the court upon the facts in issue brings the petitioners clearly within the principles recognized in that case, and there is, in that respect, no error in the decree.

The decree is not erroneous, and is affirmed.

In this opinion the other judges concurred; except DUTTON, J., who having tried the case in the court below did not sit.