JOSEPH F. NIES *vs.* THE CONNECTICUT RIVER BRIDGE
AND HIGHWAY DISTRICT (MORGAN G. BULKELEY
ET ALS.)

First Judicial District, Hartford, March Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and ELLS, Js.

The Connecticut River above the stone bridge at Hartford is a
navigable stream, not for the entire width, but in those parts
only which are of sufficient capacity to be used for trade and
commerce in the usual modes and which serve the useful pur-
poses of navigation. Whether or not a given portion of the
river meets this test of navigability is a question of fact.

In 1907, the defendants, who were commissioners of the Connecticut
River Bridge and Highway District, contracted for the construc-
tion of a stone bridge at Hartford. The Secretary of War ap-
proved the plans and issued a permit that the local Engineer
Officer of the United States might supervise the execution of
the work according to the contract which provided, in part,
that north of the bridge "the channel of the river shall be left
clean and clear." In order to facilitate their work, the con-
tractors drove several clusters of piles in the bed of the river
from two hundred and fifty to three hundred feet above the
bridge, the tops of which projected from six to twelve feet above
the surface of the water. When the bridge was completed in
1907, these piles were no longer needed for any purpose, and the
defendant offered uncontradicted evidence that all of them
were then removed, that none of them were sawed off below the
surface of the water, and that the contractors had no machine
suitable for sawing them off. On October 1st, 1921, the plaintiff
was engaged in pulling his flat-bottomed scow from the munici-
pal dock south of the bridge to his own wharf, which was located
above the bridge on the easterly bank, and, having passed under
one of the arches, and while attempting to proceed along the
north face of the bridge in order to reach deeper water on the
east side of the river, he was driven in a northerly direction
by the wind and current on a flood tide to a point near the
original location of one of the pile clusters, where his scow
struck a submerged, sawed-off pile and was damaged. The scow
drew from two and one half to three feet of water and the depth
of the river at high water at the place of the accident was
from three and a half to four feet. The trial court directed a
verdict for the defendant upon two grounds, first, that the

plaintiff had not offered evidence that the pile was located in a navigable portion of the river and, second, that the agent of the War Department, charged with the supervision of the work, must be presumed, in the absence of evidence to the contrary, to have performed his duty in seeing that the navigable portions of the river were left "clean and clear." *Held:*

1. That the first ground assigned by the trial court for its action was untenable, since the navigability of that portion of the stream was, upon the conflicting evidence offered as to its use for commercial purposes, a question of fact for the jury.

2. That the second ground was also erroneous, there being in law no presumption that the official duties of the War Department's agent were in fact properly performed.

3. That, nevertheless, the result reached by the trial court was correct, since there was no evidence from which the jury could reasonably have found that the pile which caused the damage was one of the cluster driven by the contractors more than fourteen years before the accident.

Argued March 3d—decided April 8th, 1926.

ACTION to recover damages for injuries to the plaintiff's barge, alleged to have been caused by the wrongful conduct of the defendants in erecting and maintaining a submerged pile in the bed of the Connecticut River, brought to the Superior Court in Hartford County where a demurrer to the substituted complaint was overruled (*Marvin, J.*) and a demurrer to the second defense was sustained, and the cause was later tried to the jury before *Simpson, J.;* the court directed a verdict for the defendants, and from the judgment rendered thereon the plaintiff appealed, and from the foregoing rulings upon the demurrer the defendants appealed. *No error.*

*Edward J. Daly,* with whom was *Herbert Spencer,* for the appellant (plaintiff).

*Harry W. Reynolds,* for the appellants (defendants).

WHEELER, C. J. The undisputed facts disclose that the defendants were commissioners for the Connecti-

cut River Bridge and Highway District, and authorized by law to erect a stone bridge across the Connecticut River between Hartford and East Hartford, and that they contracted with McMullen, Weand and McDermott for the building of this bridge. In 1907, the contractors, in order to set the stones on the tops of the arches and coping stones of the bridge, set up a large derrick on the bridge and drove several clusters of piles about two hundred and fifty to three hundred feet from the north side of the bridge; these stood from six to twelve feet above mean low water, and to them were attached the guy cables which led from the tall mast of the derrick. Plaintiff had, shortly before October 1st, 1921, brought his flat-bottomed barge or scow, from his dock on the east side of the river above McGuire island and north of the bridge, by the deep water channel on the west side of the river. On this day he intended taking his scow from the municipal wharf south of the bridge to his dock. The tide was at flood and the current and wind both running upstream. He took the scow through the third arch of the bridge from the Hartford side, with the intention of turning the scow sharply to the east when clear of the north side of the bridge and of pulling her to the east near the north face of the bridge until the scow came close to the east bank, where the water was deeper, and of going thence north along the east bank to his dock. The scow was carried by the wind and current farther away from the bridge and to the north and west than plaintiff purposed, the small power boat used being unable to hold her to the intended course, and in consequence she was driven farther north of the bridge than plaintiff had ever been before with a scow. The scow, at a point about two hundred and fifty to three hundred feet north of the bridge and at about where one of the clusters of piles had been driven fourteen

or more years before, struck a pile, which drove through its bottom, causing it to be greatly damaged.

The Secretary of War approved the plans and construction of this bridge and issued a permit therefor, and also a permit that the Engineer Officer of the United States, in charge of the local district and in control of navigable waters of the district, might supervise the construction of the bridge according to the contract and plans. The contract provided: "Upstream, to the temporary bridge, the channel of the river shall be left clean and clear, with nine feet of water at low water, excepting the obstructions caused by the piers of the temporary bridge, which must be preserved intact."

The main channel was near the west bank of the river in 1907 and so continued down to the present. Near the east bank there was, in 1921, a channel deep enough to permit this scow, which drew two and one half feet at her bow and three feet at her stern, to go up. For quite a distance north of the bridge the water was deep enough easily to permit of this scow being pulled from the third arch of the bridge to the east channel. At the point where the scow struck the pile the water was about two feet at mean low water or three and a half to four feet at high water, and south of this point it remained of about this depth until reaching the deeper water closer to the north face of the bridge. There was no warning of any kind in the river indicating the presence of this submerged pile and the plaintiff had no knowledge of it prior to his scow striking the pile. Thus far we see no substantial difference in the evidence offered by the respective parties.

The evidence offered by defendant tended to prove also that the contractors removed all of these piles when the bridge was finished in 1907, and that the con-

tractors had no use for a pile or a cluster of piles under the water, and no machine with which to saw off a pile. The pile which struck plaintiff's scow and which he sawed off had also been sawed off on its upper end. The engineer for the district was careful to see that the piles were removed. And no witness contradicted this testimony either directly or by reasonable inference.

The trial court correctly held in its charge directing a verdict, that the burden was upon the plaintiff to prove that the pile which he claimed broke through the bottom of his scow was placed and left in the riverbed by the defendant commissioners, or their agents or servants, and in such manner and place as to constitute a menace to navigation and therefore a nuisance. Its direction of a verdict was based upon two grounds: (1) that the plaintiff had failed to show that the pile was left in the navigable portion of the stream; (2) that the court must assume, in the absence of evidence to the contrary, that the War Department, which authorized the placing of the clusters of piles in the bed of the river, had authority to control the removing of such obstructions and performed its duty in seeing that the piles, so far as they constituted an obstruction to the navigable portion of the river, were removed by the contractors. The Connecticut River north of this stone bridge is a navigable stream. *Enfield Toll Bridge Co.* v. *New York & N. H. R. Co.,* 17 Conn. 40, 63; *Adams* v. *Pease,* 2 Conn. 481, 483; *Pitkin* v. *Olmstead,* 1 Root, 217, 219. We did not intend by these decisions to characterize this river as a navigable stream in all of its parts from east to west bank. Our characterization applied to those parts of the river which were of sufficient capacity to be capable of being used for trade and commerce in the usual modes, and serving the useful purposes of navigation.

*Groton and Ledyard* v. *Hurlburt,* 22 Conn. 178, 186; *Wethersfield and Glastenbury* v. *Humphrey,* 20 Conn. 218. What waters of the Connecticut River north of this bridge are navigable is a question of fact. *Orange* v. *Resnick,* 94 Conn. 573, 578, 109 Atl. 864. The jury might reasonably have found that the river, at the point where this pile projected from its bed, was of sufficient depth to permit boats drawing not to exceed three and one half feet to pass over its waters at high tide, and that it was reasonable to have passed through the third arch of the bridge and thence along the north face of the bridge to the channel near the east bank of the river. Whether or not it was reasonable to have attempted to propel the scow as the plaintiff did, or to have gone as far to the north as he did, was for the jury to determine. Whether or not it was a mere incident of navigation to have had the wind and current swing the scow as far to the north and west as it did was a question of fact for the jury. The evidence was conflicting as to whether this part of the river where this pile was found, was used by boats for the useful purposes of trade and commerce, and in the manner the plaintiff was using it, at the time his scow struck the pile. If the jury credited the plaintiff's testimony, they would have found that it was so used; if, on the contrary, they credited the evidence offered by the defendants, they must have found that this part of the river in the place where the pile was found was not navigable for such purposes. In this condition of the evidence the court was bound to submit this particular issue to the determination of the jury. *Ulrich* v. *New York, N. H. & H. R. Co.,* 98 Conn. 567, 119 Atl. 890.

The second ground upon which the verdict was directed is more untenable than the first. The court was without power to hold as a matter of law that the

War Department had removed or caused these piles to be removed from the river because it was its duty to have done this. However, while we disapprove of the direction of the verdict as contrary to the method we point out in *Ulrich* v. *New York, N. H. & H. R. Co., supra,* we, nevertheless, think the conclusion reached can, and should be, supported upon another ground. The jury might reasonably have found that a cluster of piles was driven in the bed of the river at the point where this pile was found fourteen years later. There is no evidence that this or any pile was seen in or out of the water at the place this pile was found, from the time the cluster of piles was removed until the time the scow ran upon this pile. The undisputed evidence was that this cluster of piles stood out of the water some six to twelve feet, that all of these piles were removed by the contractors, that none of them were sawed off, and the contractors did not have the means to have sawed them off, that the pile in question was sawed off and stood about one and a half feet above the bed of the stream, and that the contractors had no use for a pile or a cluster of piles under the water. The inference from these facts, that the pile the plaintiff's scow ran upon fourteen and more years after these contractors drove the cluster of piles in the bed of the river at about the place where this pile was found, was in fact one of this cluster of piles, would be extremely far-fetched. In view of this conclusion, we have no occasion to consider defendants' claim that in no event could they be liable for the act of McMullen, Weand and McDermott in leaving this pile in the bed of the river, since they were independent contractors.

There is no error.

In this opinion the other judges concurred.