THE EDWARD BALF COMPANY *vs.* THE HARTFORD
ELECTRIC LIGHT COMPANY.

First Judicial District, Hartford, March Term, 1927.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

A river is navigable when it is being used, or can be used, in its natural and ordinary condition as a highway for commerce, over which trade and travel are or may be conducted in the modes customary on water.

A private person is not entitled to an injunction against a public nuisance in navigable waters unless he has sustained a special or peculiar damage distinct from that which he suffers in com-

Balf Co. *v.* Hartford Electric Light Co.

mon with the rest of the public, and one which is, or will be, substantial or serious.

The plaintiff owns a plot of land, used for the storage of materials required in its road-building business, on the south bank of the Park River, which flows through the city of Hartford for a distance of thirteen hundred feet from the plaintiff's premises to its confluence with the Connecticut River, following a tortuous course between steep banks and having a width of from forty-six to fifty-two feet and a minimum depth of five feet except during the dry season of the summer months. The defendant's power house is situated on the south bank about five hundred feet from the confluence, and on the opposite bank it owns another tract of land which it uses as a distributing point for its light and power. In 1918, the defendant, acting under a three-year permit issued by the War Department and renewed for a like period in 1921, erected a duct line or conduit connecting its two properties and so situated as to bar completely all navigation in the river. In the present action, the plaintiff sought an injunction to restrain the defendant from maintaining this obstruction, alleging that it purposed to use the stream for the transportation by water of materials to its storage yard. *Held:*

1. That the trial court's conclusion that the river was navigable was supported by the subordinate facts showing, among other things, the former use of the river in the customary modes of trade and commerce; the assumption and exercise by the United States government of jurisdiction over it as navigable water; the placing of draws in bridges erected by the city and by the New York, New Haven and Hartford Railroad Company; the repeated recognition by both parties of the navigability of the stream in applications made by them to the War Department for various permits and their submission to the jurisdiction of the Federal government; and the practicability of using the stream, for nine months in the year, in the customary modes of trade and commerce.

2. That the validity of this conclusion was not weakened by the fact that, in recent years, the river has not been used for the passage of boats, with the result that the channel has filled in to such an extent that some dredging will be necessary to make it generally available for navigation.

3. That the defendant's applications to the War Department for permits, containing recitals of the navigability of the river, were properly received in evidence by the trial court as admissions by the defendant contrary to its position in the present action; and that the permits were admissible as tending to prove the fact of navigability.

4. That the absence from the finding of facts showing definite in-

jury or loss to the plaintiff's business from its inability to use the river, justified the trial court's conclusion that it had not proved the special, peculiar and substantial damage essential to its right to injunctive relief; and that however much such facts might appear from the evidence certified to this court upon the defendant's appeal from the conclusion of navigability, they could avail the plaintiff nothing on its appeal in the absence of a motion to add them to the finding.

Argued March 1st—decided June 28th, 1927.

ACTION for an injunction to restrain the defendant from maintaining an obstruction to navigation in the Park River, brought to the Superior Court in Hartford County and tried to the court, *Wolfe, J.;* judgment rendered that the obstruction constituted a public nuisance, but that the plaintiff was not entitled to relief against it, from which both parties appealed. *No error on either appeal.*

Plaintiff is engaged in Hartford in the road-building business, in which it produces, purchases and sells large quantities of crushed stone, sand, road oils, including asphalt, and other materials used in the construction of roads, and in the conduct of its business it must and does maintain large quantities of sand and oils for immediate uses. The plaintiff owns a plot of land, approximately three hundred and fifty feet in depth and one hundred and eighty feet in width, on the southerly bank of the Park River, which is a small stream running through the city of Hartford, and located about thirteen hundred feet from the confluence of the Park River with the Connecticut River. Approximately five hundred feet above plaintiff's property, is the Commerce Street bridge crossing the Park River, built by the city of Hartford, having a draw in it, and being about eighteen hundred feet above the confluence of these rivers.

The defendant is a public service corporation, being

the sole source of supply of light and power by electricity for commercial and domestic uses in Hartford. It owns two tracts of land, one on the north side of the Park River, which is used for its power house, and the other opposite to it on the south side of this river and used for the distribution of such light and power, and being about five hundred feet from the confluence of these rivers. About two hundred feet from the confluence of these rivers, is a trestle extending across the Park River. About one hundred and eighty feet from the trestle, is a railroad drawbridge extending across the Park River, which belongs to the New Haven Railroad and has been there over thirty years, and has been opened upon but a few occasions to permit the passage of boats. It was last opened in 1909 or 1910, to let in a barge of stone for defendant. The elevation of the bottom of the girders of the bridge is 24.3 feet; between the buttresses of the bridge is a clearance on the water line of approximately sixty feet. The draw of the bridge must be opened to permit schooners, large tugs and barges to pass up the Park River. About two hundred feet above this bridge defendant has an overhead coal conveyor extending across the river, connecting its property on each side and built so high that it would not interfere with any navigation on the river.

Defendant was, on December 18th, 1918, granted a permit by the War Department to change the course of and improve the Park River through its properties which lie between the property of the plaintiff and the confluence of these rivers. On May 8th, 1919, another permit was granted defendant by the War Department, authorizing the construction of a temporary duct line across the Park River between defendant's two properties. This conduit was constructed by the defendant under its permit about fifty feet above the coal conveyor, with concrete columns or uprights sup-

porting the same. It is a necessary part of defendant's plant and completely bars the navigation of the river. In December, 1921, defendant's permit to change the course of the Park River having expired, another permit was granted it, extending the time of completion for three years and carrying with it an extension of the temporary permit to maintain the concrete conduit for a like period. In the latter part of 1924, defendant abandoned its plan to improve and change the course of the Park River, which work has never been done. On August 20th, 1924, defendant again petitioned the War Department, reciting therein its intention to sometime develop "the navigable features" of the Park River at its own expense, but not within three years from January 1st, 1925, and requesting an indefinite extension of time for the removal of the conduit until such time as the public authorities or abutting owners have actually made plans and provided the funds necessary for the work of "making the bed of this river navigable." In aid of such petition, defendant sought to have the owners of land on the Park River approve of its petition to the War Department, and in the instrument which, at its instance, all the owners of property on this river but the plaintiff signed, the Park River is referred to as a navigable stream. All of its various petitions to the War Department made similar reference. At one time there was a shipyard located near the mouth of the Park River. Formerly there were a number of docks on the Park River below Commerce Street, which were used for the unloading of boats until later the docks on the Connecticut River were raised so that boats could be unloaded in the freshet seasons. There was also formerly an extensive basin, formed by the overflow of the Connecticut River in freshet seasons, from Commerce Street to the confluence of these rivers. A num-

ber of years ago the low flat ground on either side of
the Park River within these bounds was filled in and
as a consequence the basin largely filled. Due to the
raising of the docks on the Connecticut River and the
filling of the basin, navigation on the Park River grad-
ually ceased. For some years the properties on both
banks of the Park River from Commerce Street to its
mouth, have been exclusively devoted to commercial
uses other than loading and unloading boats. Park
River is in the main narrow, with steep banks, sharp
turns, and an irregular bottom. Its width varies with
the amount of water in it; at the northern boundary
line of plaintiff's property it is forty-six feet wide, at
the trestle fifty-two, and at the railroad bridge forty-
eight. There are between plaintiff's property and the
mouth of the river three sharp bends. It is subject to
violent fluctuations in water depths on account of the
rapid rise of the Connecticut River in freshet seasons
and its rapid fall when the floods abate. For at least
nine months in the year there is a minimum depth of
five feet of water in the Park River and during such pe-
riods it is navigable. For two or three months in the
summer time there is, as a rule, not enough water in the
river to enable it to be used as a navigable stream. It
can be dredged, however, to make it navigable during
the summer months. Plaintiff's property on the Park
River has been and still is used for the storage of mate-
rials and for other purposes in connection with its road-
building business. Plaintiff also owns a tract of land
on the east bank of the Connecticut River just above
the bridge connecting Hartford and East Hartford. It
uses this tract in connection with its digging of sand
from the Connecticut River, adjacent thereto, under
Government permit, for road construction purposes. It
is the purpose of plaintiff to use its land situated on
the Park River for the storage of sand and other mate-

rials used by it in its business, and also to bring oil and other materials to such land by water, and use the same as a point of distribution in the execution of its various works. It is entirely practical to convey sand from Hog Island, where the plaintiff operates its plant, to plaintiff's property on the Park River by motor-boats and barges in four feet of water, and there are powerful motor-boats drawing three or four feet of water, capable of towing barges carrying ten or twelve tons.

The court reached these conclusions: (1) that the Park River is of sufficient capacity to be capable of being used for trade and commerce in the usual modes and serving the useful purpose of navigation, and is navigable; (2) that the conduit of defendant over the river obstructs the navigation of the river and is a public nuisance, but that plaintiff does not suffer an injury distinct from that which it suffers in common with the rest of the public, and therefore it is for the Government to abate it.

*Allan E. Brosmith,* with whom was *Warren Maxwell,* and, on the brief, *William Brosmith,* for the appellant (plaintiff).

*James W. Carpenter* and *Austin D. Barney,* for the appellant (defendant).

WHEELER, C. J. The plaintiff seeks in this action a permanent injunction restraining the defendant from maintaining a concrete conduit across the Park River and thereby interfering with plaintiff's access by water to its property located upon the south bank of the river.

The trial court reached the conclusion that the Park River is a navigable river and that the conduit main-

tained over the river obstructs its navigation and is a public nuisance, but that the injunction prayed for could not issue for the reason that it had not been established that the plaintiff suffers an injury distinct from that which it suffers in common with the rest of the public. Both parties have appealed; the defendant, primarily, because of the court's conclusion that the Park River is navigable and that defendant's maintenance of the conduit is a public nuisance and unlawful; the plaintiff, because of the court's rulings that it did not suffer an injury distinct from that which it suffers in common with the rest of the public, and because the financial loss caused the plaintiff was not an injury distinct from that suffered by the public generally. We will consider the defendant's appeal first. Manifestly it must fail unless one or more of the rulings on evidence are held erroneous and harmful, or the finding is corrected to such an extent as to make erroneous the conclusion of the court as to the navigability of the Park River. The maintenance of this conduit without lawful permission is a public nuisance if the river is navigable, so that the ultimate question to be decided upon defendant's appeal is whether the conclusion of the court that the Park River is a navigable river is supported by the subordinate facts. Over defendant's objection, the court admitted evidence showing defendant had, between December, 1918, and August, 1924, petitioned the War Department for authority to change the course and improve the Park River through its properties situated on this river, and had been granted a permit to make this improvement, which at its request was renewed in 1921 for an additional period of three years; that it petitioned the War Department in 1919 for a permit to erect the coal conveyor, and the Department granted the permit to erect it so high that it would not interfere with navi-

gation; that in May, 1919, the Department issued to defendant, upon its petition, a permit to construct and maintain the conduit across the river, and upon its petition for additional time to maintain the conduit in August, 1924, the Department denied the petition; and that thereafter its maintenance was without official authority, national, state or municipal. All of these petitions described and referred to the Park River as a navigable stream. All of this evidence was plainly admissible as tending to prove from the acts of authority of the National government over this river, which could only be exercised lawfully over a navigable river, that it was navigable. *Kregar* v. *Fogarty,* 78 Kan. 541, 96 Pac. 845; *Harrison* v. *Fite,* 148 Fed. 781. The evidence was also admissible as admissions made by the defendant of the navigability of the river and of the jurisdiction of the National government over it. While not conclusive, the evidence was certainly persuasive of the fact of navigability and of the defendant's recognition of this fact. That plaintiff petitioned for and secured in April, 1926, a permit from the War Department to dredge a channel in the Park River seventy feet wide and to a depth of not less than seven feet at mean low water, from its property to the confluence of these rivers, was also admissible as tending to show that the National government exercised jurisdiction over this river, a fact evidencing that the river was in fact navigable. None of the rulings excepted to were erroneous.

Reasons of appeal which seek corrections of the finding may be disposed of briefly. Reasons twenty, twenty-one, twenty-two, twenty-five and twenty-six request the incorporation in the finding of evidential facts; these have no place in the finding under the Rules. Reason twenty-three would add to the finding "that the Park River neither has nor had any channel." This

reason is based upon a misunderstanding of the evidence. Defendant's cross-examination of the witness Dorsey twice assumed as a fact that all the people along the Park River filled in up to the channel of the river. Reasons thirty and fourteen cover immaterial subordinate facts, and fourteen cannot be held to be an undisputed fact. Reason sixteen is denied. The finding does sufficiently portray the situation as to the use of the docks on the Connecticut and Park rivers and the especial reason why the docks on the Connecticut River ceased to be used and those on the Park River used. In paragraph thirty-seven of the finding, "in 1885" should be inserted after "formerly." Reason nineteen is granted to the extent of inserting "about 20" in place of "some" and before "years" in paragraph thirty-nine of the finding. Reason fifteen is granted in part by adding to paragraph thirty-five of the finding that the city of Hartford and the riparian owners along this river, including the plaintiff, participated in the filling-in-process as a result of which the south bank and the filled-in property forms a plateau several feet above mean low water, and that either before or just after its purchase of this property in 1902 and 1904, plaintiff filled in along its property to a depth of about seventy-five feet and at present is about twenty-five feet beyond the line of the river. Reasons twenty-seven and twenty-eight are granted in substance with the qualifications stated, viz.: Immediately prior to the time defendant constructed the conduit over the Park River it was not being used in its natural and ordinary condition as a highway of commerce over which trade and travel were conducted in the customary modes of trade and travel on water, and that if the conduit were removed the river cannot be so used without being cleared of debris and refuse, and somewhat dredged where it had been filled in, and without provision being

made for a greater width of the river at some point
west of plaintiff's land and east of the Commerce Street
bridge for boats to turn in.

The most important correction of the finding desired
is covered by reasons twenty-four and twenty-nine,
that the first sentence of paragraph forty-one be
stricken out, viz.: "For at least nine months in the year
there is a minimum depth of five feet of water in Park
River, and during such periods it is navigable." Our
examination of the evidence does not enable us to hold
that this finding was made without evidence; accord-
ingly this reason of appeal must be denied. A river is
navigable when it is being used, "or is susceptible of
being used, in its natural and ordinary condition as a
highway for commerce, over which trade and travel
are or may be conducted in the customary modes of
trade and travel on water." *Oklahoma* v. *Texas,* 258
U. S. 574, 586, 42 Sup. Ct. 406; *Nies* v. *Connecticut
River Bridge & Highway District,* 104 Conn. 382, 132
Atl. 873.

The court's conclusion in the application of this test
to the facts found is one of fact which cannot be dis-
turbed unless the subordinate facts do not support it,
or it is found contrary to the rules of law or reason.
The subordinate facts as found by the court show that
the Park River was formerly used in the customary
modes of trade and commerce by water; that the
United States government assumed to have and exer-
cise jurisdiction over it as a navigable stream; that
the city of Hartford recognized the fact of navigability
by its erection of a drawbridge over Commerce Street;
that the New Haven Railroad recognized this fact by
placing a draw in its bridge over this river; that the
defendant had repeatedly recognized this fact and the
jurisdiction of the United States government over
the river, by its various petitions for permits, and, so

far as appears of record, it had at no time during its ownership of property along this river disputed the fact of navigability, or the jurisdiction of the United States government; that the plaintiff had likewise recognized the fact of navigability and the jurisdiction of the Government, and that the depth of water in the river for nine months of the year was capable of being used for trade and commerce in the usual mode, and of serving the usual purposes of navigation.

. The conclusion of the court that the Park River is a navigable stream from its confluence with the Connecticut River to the Commerce Street bridge is justified upon the subordinate facts as found, and as corrected. We also agree with the opinion of the trial court in the conclusion that, "The fact that it [this river] has not been recently used for the passage of boats and that as a result thereof the channel has filled in, so that it will require some dredging to make it generally available for use for boats of a light draught, does not, in my opinion, make the river lose its character as a navigable stream."

The plaintiff's appeal assigns two errors: "(1) The court erred in ruling that the plaintiff did not suffer an injury distinct from that which it suffers in common with the rest of the public. (2) The court erred in ruling that the financial loss caused to the plaintiff by its inability to transport by water to its property on the Park River sand and other materials used in the construction of roads and highways, in which business it is engaged, was not an injury peculiar to itself and distinct from that suffered by the public generally."

The only facts found by the court pertinent to the damages suffered by the plaintiff from the defendant's alleged interference with the navigation of the Park River, are that it owns two tracts of land on this river which have been and still are used for the storage of

materials and for other purposes in connection with its business of road building; its purpose is to use its land for the storage of sand and other materials used by it in its business, and also to bring sand from Hog Island, an entirely practical method of transportation, and oil and other materials to its Park River plant by water, and use it as a point of distribution. The court further found that on April 22d, 1926, the War Department, acting by its proper officers and engineers, issued a permit to plaintiff, upon its application, authorizing plaintiff "to dredge a channel . . . from its confluence with the Connecticut River to a point opposite the applicant's property, about 1300 feet upstream, and to construct a wharf approximately 190 feet long, in front of its property according to plans hereto attached"; which work had not been begun by plaintiff at the time of trial.

There is no finding that defendant's acts have caused plaintiff any damage, much less special damage. There is nothing in the record to indicate that the court made the ruling which the second assignment of error in the appeal attributes to it. The finding as it stands fully supports the court's first conclusion. A private person cannot maintain an injunction against a public nuisance in navigable waters unless he establishes that he has sustained a special or peculiar damage distinct from that which he suffers in common with the rest of the public. Moreover, the violation of the complainant's rights must be such as is, or will be, attended with substantial or serious damage. *Bigelow* v. *Hartford Bridge Co.,* 14 Conn. 565, 579; *Frink* v. *Lawrence,* 20 Conn. 117, 120; *Falls Village Water Power Co.* v. *Tibbetts,* 31 Conn. 165; *Wheeler* v. *Bedford,* 54 Conn. 244, 7 Atl. 22.

The finding does not present a case of substantial or serious damage. It does not state even a case of

actual damage. All that can be definitely known from its allegations is that plaintiff purposed moving by water materials used in its business to its premises upon this river, but whether the deprivation of this right would be an injury to its business, or cause it loss or damage, and if so, to what extent, is not stated. Whether it purposes to exercise its rights under the Government permit or not, is not stated. The court's conclusion that plaintiff had not made out the special damage without which the injunction prayed for could not be issued, is supported by the finding. The plaintiff, in its pleadings and in its conduct of the trial and in the argument before this court, also recognized the necessity of its establishing substantial loss or damage accruing to it specially, as distinguished from that suffered by interference with the right of navigation of the Park River common to each member of the public. Our consideration of defendant's appeal has required us to examine the evidence with care; it is impossible for us to avoid the conclusion that the plaintiff did present a very considerable body of evidence tending to prove the special damage upon which alone the injunction it prayed for could issue. Plaintiff's appeal is argued upon the theory that this evidence, especially that tending to prove an economy in the transportation of material by water over other methods, can be examined by us for the purpose of testing this conclusion of the court. Since a request for a correction of the finding has not been made a part of this appeal, we cannot correct it. There is no other purpose for which we could consider the evidence in a trial to the court. The plaintiff's case as stated in the finding is entirely lacking as to the elements of substantial damage peculiar to the plaintiff which is an essential requisite in an action by a private person for damage suffered through a public nuisance. *Burrows* v. *Pixly,* 1 Root,

362; *O'Brien* v. *Norwich & W. R. Co.*, 17 Conn. 372; *Frink* v. *Lawrence,* and *Wheeler* v. *Bedford, supra.* The rulings made by the trial court and those made by us must be confined to those appearing in the finding, and the rulings of the trial court must be determined by the facts appearing in the finding. That is the primary purpose of the finding upon an appeal. In a situation such as that in the present case, we must decide the plaintiff's appeal upon the record as it is made up; upon this record the trial court did not err.

There is no error upon either plaintiff's or defendant's appeal.

In this opinion the other judges concurred, except HAINES, J., who concurred in the result, but dissented in part from the reasoning.