Michalina Sozanska *vs.* The Town of Stratford et al.

Third Judicial District, Bridgeport, October Term, 1930.

Maltbie, Haines, Hinman, Banks and Avery, Js.

Argued October 31st, 1930—decided January 27th, 1931.

*Raymond E. Baldwin,* for the appellants (defendants).

*G. H. Mika,* for the appellee (plaintiff).

HAINES, J. Since 1914 the plaintiff has owned a piece of land in Stratford, with a dwelling thereon, which was known as Lot #40 shown on a plat called "Sunny Side," dated April 10th, 1906. The tract shown on this plat was developed by the Realty Investment Company, and Lot #40 was sold to Joseph F. Hoey in December, 1912, and by him conveyed, two years after, to the plaintiff. Neither of these deeds of conveyance made any reference to a drain through the lot. The plaintiff's dwelling stands on the westerly portion of the lot and the remainder of the lot is used as a front yard and in part as a garden.

On July 27th, 1928, the defendant by its agents, without the permission of the plaintiff, entered this lot

and dug up for the purpose of opening, a drain thereon, which had become obstructed and the plaintiff thereupon brought this action. The defendant sought to justify its entrance upon the lot by the claim that the drain referred to was in fact a natural watercourse which had existed for many years and before "Sunny Side" was developed and that thereafter the water was for the most part confined in a tile drain laid substantially in the bed of the watercourse, and that the defendant was an upper riparian owner and as such had a legal right to require the plaintiff to refrain from obstructing it, and further that the tile drain in question had been in continuous and notorious existence for more than fifteen years of which the plaintiff and her predecessors in title had full notice, to drain certain public highways in the defendant town, and that by reason thereof, the defendant had acquired a legal right to the maintenance of the drain.

The trial court heard the evidence produced by the parties and reached the conclusion that the defendant had no legal right to require that the drain be maintained on the plaintiff's lot and gave judgment for the plaintiff.

The appellant seeks radical changes in the finding and a considerable amount of evidence has been certified. In actions of this character where the evidence relates to the nature of the land, elevations and depressions thereon, lines of natural drainage, boundaries, relation and location of lots and streets and changes therein caused by new layouts, developments and highway improvements, an appellate court, even with the aid of maps, can get but limited and uncertain assistance in determining whether a trial court's finding is or is not warranted. The superior advantage of the trial court in sifting the evidence with the witnesses before it and reaching conclusions as to the physical

facts in a case of this character, is sufficiently obvious, and it would be exceptional if its finding of these facts were subject to major changes. We have read the evidence and examined the maps with care and can find no warrant for any modification which will change to any essential degree the following facts which the trial court found to be established. These facts, moreover, seem to us to find adequate support in the printed evidence and maps as we read and understand them.

There was at one time through this property a small natural watercourse. The source of this watercourse was a spring north of Barnum Avenue, the water passing under that highway and thence as a small stream following an irregular course in a general southwesterly direction, and crossing the present Lot #40, and finding its way into what was known as Bruce's Pond. About 1914 the grade of Barnum Avenue was changed, the passage of the water under this highway from the spring was permanently blocked by filling in the depression, and there has not since been any water whatever from this spring passing under the highway. The original tile drain was constructed sometime prior to 1911, and now begins on private property near what is known as Lot #12 in the development, and at some distance south of Barnum Avenue, and for most of its course follows the general line of the former watercourse southwesterly and across the plaintiff's Lot #40.

The conclusion of the trial court obviously was that the watercourse has not been in existence since 1914, and that the present tile drain has a separate and distinct existence, source and purpose. We have heretofore had occasion to consider the distinction between those sources of a natural stream or watercourse and those which comprehensively though not always with strict accuracy, have been designated as surface waters. While we did not attempt to frame an exact definition

of the latter, we did say that such waters had their source in fallen moisture, and "as to the form which the water assumed upon the surface of the ground, it was not in any case water collected or flowing in mass, but always water scattered and diffused over the earth as conditions of the weather and the conformation and character of the ground dictated, and standing still or moving aimlessly along until it should be dissipated by percolation or evaporation, or lost in the current of a stream." *Thompson* v. *New Haven Water Co.*, 86 Conn. 597, 604, 86 Atl. 585, and cases cited. On the other hand "the distinguishing mark" of a watercourse is "a supply which is permanent in the sense that similar conditions will always produce a flow of water, and that the conditions recur with some degree of regularity, so that they establish and maintain for considerable periods of time a running stream." 2 Farnham on Waters & Water Rights, § 457. The subordinate facts when considered in the light of these distinctions, clearly support the conclusion of the trial court that the natural watercourse had ceased to exist in 1914. This automatically disposes of the defendant's claim that at the time of the entry complained of, it had rights as an upper riparian owner. The finding makes it pretty clear that the purpose now served by the tile drain is to drain the lots of other persons than the defendant, it not appearing that the latter owns any lots in the tract. Further it appears that this drain is referred to in some of the title deeds of these other lots.

In 1911 the defendant town acquired the fee of the land in two streets which had been laid out in a northerly and southerly direction across the tract by the development company, known as Otis and Cornwall streets. The plaintiff's Lot #40 fronts on Cornwall Street and Otis Street runs parallel to it some distance

to the eastward. Until 1926 no surface water from either of these streets could enter this drain save by some overflow in times of heavy rains, but in that year the defendant town built a catch basin on Otis Street and carried the surface water of that street into this drain at that point. None of the surface water from Cornwall Street is conducted into this drain.

This brings us to the consideration of the second defense set up in the answer, that the town has a legal right to have this drain maintained across the plaintiff's land because for more than fifteen years it has been used to drain the surface water from the public highways of the town. The authority for this claim is said to be General Statutes, Rev. 1918, §1428, now § 1428, Rev. 1930, and the cases of *Judge* v. *Meriden,* 38 Conn. 90, and *Bronson* v. *Wallingford,* 54 Conn. 513, 521, 9 Atl. 393. In both these cases the surface water of a public highway was discharged upon the lands of lot owners, and such action was held justified by the statute above referred to. The defense fails in the present case however for two reasons: (a) the facts do not bring this case within the statute, as we have seen, and (b) the statute expressly denies the right to discharge surface water from the public street "through or under the yard of any dwelling house" and this drain is in the front yard of the plaintiff's dwelling. As a grant of powers in derogation of private right the statute must have a strict construction. *Torrington* v. *Messenger,* 74 Conn. 321, 50 Atl. 873; *Rudnyai* v. *Harwinton,* 79 Conn. 91, 63 Atl. 984.

At least two other defenses are suggested by the defendant's brief, but neither is pleaded, nor so far as appears, advanced in the court below, and in any event an adequate discussion of them would be impossible without a finding of further facts than now appear of record. We refer to the suggestion that the plaintiff

was maintaining a nuisance which the defendant had a legal right to abate, and that plaintiff's Lot #40 is charged with the maintainance of this drain for the benefit of other lot owners, none of whom are parties to this proceeding.

There is no error.

In this opinion the other judges concurred.