## MARY A. PENDERGAST, ET AL.
### vs.
## TOWN OF COLEBROOK

Superior Court        Litchfield County        File #8964

Present:   Hon. FRANK P. McEVOY, Judge.

Wilbur G. Manchester;
H. Roger Jones,               Attorneys for the Plaintiffs.

Blodgett & Schaefer,          Attorneys for the Defendant.

**MEMORANDUM FILED FEBRUARY 9, 1938.**

McEVOY, J.   This action is brought by the plaintiff to recover damages because, in the year 1935, the defendant caused certain changes and repairs to be made in the Mill-brook Road, which involved the regrading and altering of the surface of the road and the installation of new masonry and concrete culverts diagonally across the road, the result of which is claimed to have been that a greatly increased collection and accumulation of water was cast upon the premises owned by the plaintiff and occupied by her brother.

The defendant, generally, denies that any damage was caused and justifies its action under the provisions of section 1428 of the General Statutes, Revision of 1930.

Upon the conclusion of the testimony offered by the plaintiff upon this trial a request was jointly made by counsel of record that the trial judge view the premises. In company with both counsel of record this was done.

Upon the pleadings, the evidence, and the view of the premises the following facts are found:

The alteration and change in the road and the construction of a sluice upon and onto the land of the plaintiff was made by the defendant under a "State Aid" arrangement with the State Highway Commissioner.

Prior to and during the time when the construction and change were under way the plaintiff and members of her family made a number of complaints to the selectmen of the defendant town. By reason of these complaints various interviews were had between and among the parties. As a result of these interviews a brother of the plaintiff made a suggestion that an alternative plan of construction be used which would do away with the necessity for constructing a sluice so that waters from the highway and from properties adjacent to and opposite that of the plaintiff would be cast upon and carried onto the plaintiff's land. In connection with these conversations the brother of the plaintiff offered to contribute his services and also to assist in the alternative plan. If this suggestion had been adopted the entire expense to the defendant would not have exceeded $125.00. At the time of these conversations the first selectman, acting on behalf of the defendant, obtained a figure from someone in the State Highway Department, whose identity has not been disclosed, which estimated the total cost to the defendant as about $530.00. Upon the trial it appeared that no definite details of figures had been furnished to the defendant at the time in question by anyone connected with the Highway Department. Upon the trial the estimate of the total expense to the town was stated to be $770.00. The details which form a basis for this figure were made up by a representative of the State Highway Department on the night before the first day of this trial. The detail of the $770.00 estimate was, therefore, not available to the defendant in 1935 while the construction was under way.

If the so-called alternative plan had been adopted it would have been more feasible and expedient and would not only have carried the water along the highway in a much better manner than is done under the present plan but it would have prevented the institution of this action; would have been much more reasonable; and would have saved the defendant and the State a great deal of money.

As part of the general alteration of the road and the changing of the grade the old stone culvert which measured two and a half by one and a half feet was removed and an eighteen inch cement round culvert was substituted.

The old stone culvert, prior to the alterations made in September, 1935, was partially clogged so that not over one-third to one-half of its inner space was available for the flow of water.

The installation of the eighteen-inch inside measurement cement round culvert caused an additional flow of water to be cast upon the plaintiff's land.

It would have been feasible and comparatively inexpensive to have diverted the water from the point where it entered the sluiceway which now casts the water upon the plaintiff's land so that it would have been carried along the side of the road opposite to the land of the plaintiff. If this work had been done when the actual operations were going on and when the men and machinery were there the reasonable expense, including work to be done by the plaintiff's brother, for carrying the water along the westerly side of the highway, would have been not in excess of $125.00.

The defendant did the work in question under the provisions of **section 1428 of the General Statutes, Revision of 1930**, and claims that it has complied with the terms of that statute, and that it might, by reason of the provisions of that statute, lawfully drain the water on to the private land of the plaintiff.

The statute provides that the water may be drained "into or through any person's land so far as necessary to drain off such water . . ."

The statute further provides that "when it shall be necessary to make any drain upon or through any person's land . . . it shall be done in such way as to do the least damage to such land . . ."

It is evident that the permission to drain onto private land was carefully hedged about with restraining provisions so that unnecessary harm might not be done to the private owners.

A town has "no right to collect in ditches alongside the highway the surface-water flowing from lands above it, and discharge such water, by means of sluices across the road, upon the lower premises of an adjoining owner, when by a moderate expenditure of money the water could have been carried off so as not to injure such premises." **Salzman vs. New Haven, 81 Conn. 389, 392.**

". . . municipal immunity from liability for injuries result-ing from the maintenance and repair of highways, does not extend beyond the governmental duty imposed by the State." **Rudnyai vs. Harwinton, 79 Conn. 91, 95.**

A municipal corporation is "a person in law, capable of in-flicting injuries, and liable to suit by him who suffers them, unless they flow from or are incident to the performance of .a governmental duty." **Judd, et al. vs. Hartford, 72 Conn. 350, 353.**

Upon the evidence it is apparent that, in turning the water upon the land owned by the plaintiff, no real effort was made to do so, "in such way as to do the least damage to such land."

The selectman, Wyellys B. Smith, who seems to have more to do with the negotiations than anyone else, acted in good faith and, apparently, upon information furnished to him by someone in the State Highway Department. He then be-lieved and still believes that the cost under the so-called alter-native plan, would have been excessive. On the other hand, Thomas O'Brien, Jr., who was a selectman for seven years, seemed to feel that the so-called alternative plan was feasible and that it would have been fair to the plaintiff and her brother to have adopted it.

One of the objections made on behalf of the defendant to the so-called alternative plan was that it would interfere with a driveway from the highway near the foot of the hill to a building on the Colebaugh property on the westerly side of the road. Although a good deal of testimony was had as to the existence of this driveway a view of the premises disclosed that there is not now, and never was, any such driveway there. So that since no driveway of that kind is there it

could not have been affected by the adoption of the so-called alternative plan.

One of the exceptions in the statute, **Section 1428,** is "provided nothing in this section shall be so construed as to allow the drainage of water from such highways, into, upon, through or under the yard of any dwelling house . . ."

The claim is made on behalf of the defendant that the premises of the plaintiff upon which the water has been cast by the action of the defendant is not a "dooryard in front of any dwelling house" within the purview of the statute. This would be so if dooryard "in front" of a dwelling house, as the term is used in the statute, meant only that portion of a dooryard which lies strictly in front of the house, that is, between the house and the street and between lines drawn from the house to the street parallel to the sides of the house.   **Torrington vs. Messenger, 74 Conn. 321, 325.**

Further in that case it was said (p. 325): "Plainly the statute uses its language in no such narrow meaning.   The words 'in front of', etc., plainly qualify 'dooryard'.   They do not fix a place in the dooryard where water may not be drained. The words taken together are equivalent to 'front dooryard', and these words have no such confined signification as the . . . contention compels.   Whether we look at the language, or manifest spirit and intent of the exception, the result is the same in excluding the strained and narrow interpretation."

The general trend of the interpretation of **Section 1428** is plainly indicated by the following language from the case just cited, at pages 323, 324, 325, thereof:

"We have, however, felt it our duty to sound a note of warning to any who may wish to avail themselves of the powers conferred, or apparently conferred, by this statute, to be well advised that their action is such as is not forbidden by organic law . . . It should be borne in mind also, in reading this statute, that it is one in derogation of private rights, and therefore should be strictly construed against its grant of power."

The defendant further claims in its brief, that because the defendant had so drained such surface water into and through the land now owned by the plaintiff for many years, that this condition and situation has existed for so long a time that the defendant has a legal right to discharge the surface waters

through and across the land of the plaintiff under the provisions of **Section 1428**.

This claim may not be sustained for several reasons. In order that the defendant may justify its action under the statute it must appear that it is "necessary to drain off such water through a person's land" and that "it shall be done in such way as to do the least damage to such land."

Neither of these two elements is found to exist in the present case. Not only was it not necessary to drain the water off the highway onto the plaintiff's land but, in addition to this, it is conceded that the defendant gathered the water which had flowed onto the highway from the land of the contiguous owner, and had deposited this added water, in addition to the surface water upon the highway, onto and across the plaintiff's land.

The evidence and the view plainly show that it would have been much more feasible to have carried the water along on the westerly side of the road, opposite the land of the plaintiff, and not to have deposited it at all upon the plaintiff's land. To sustain the claim of the defendant in respect to the legal right to cast the water upon the land of the plaintiff by reason of the long-continued use would be to assert that one whose land has been so used may not be permitted to develop it in the face of this "right". In other words, if land has been idle for many years and if the owner wishes to build a house upon it and thereby add to his own comfort and place a taxable house upon the lists of the assessors where none had been before, he may not, under the defendant's theory, be permitted to do so.

This is not the law. **Sozanska vs. Stratford, 112 Conn. 563, 568; Rambush, et al. vs. Town of Salem, 3 Conn. Sup. 404.**

Among other items of damage the plaintiff seeks to recover specifically because its stone barn was injured by reason of the action of the water occasioned by the freshet of March, 1936. The court takes judicial notice of the prevalence and intensity of the flood waters which then occurred.

"The test is whether the injury, though the storm be the direct cause, is yet referable in some degree to the defendant's unreasonable failure to anticipate the danger which arose and to take rational and reasonable precautions to ward off the probable consequences of the storm. It is the duty of a de-

fendant to be reasonably vigilant to avert disaster by such means as might reasonably be utilized under the circumstances. A failure thus to act may, in a given case, amount to a concurrence with the forces of nature and be held a contributory proximate cause of and a substantial factor in the resulting injury. Speaking generally, therefore, the liability of this defendant for the plaintiff's injury, is governed by the test which is commonly applied in all negligence actions, viz.: did the defendant use that care which a reasonably prudent, experienced and capable man would have used under all the circumstances which were known or should have been known to him?" **Pleasure Beach Park Company vs. Bridgeport Dredge & Dock Company, 116 Conn. 496, 502, 503.**

"These are classed with inevitable accidents, as the result of **vis major** or act of God against which one cannot reasonably be required to provide." **Bridgeport vs. Bridgeport Hydraulic Company, 81 Conn. 84, 87.**

Under the law, as interpreted in these two decisions—and in other cases—the defendant is not legally liable to the plaintiff for the damage occasioned by or incident to the floods of March, 1936.

Upon the other elements in the case the issues are found in favor of the plaintiff. Judgment may enter for the plaintiff to recover of the defendant $500.00 damages and her costs.