RICHARD CORENTIN ET AL. *v.* TOWN OF COLUMBIA

SUPERIOR COURT      TOLLAND COUNTY      FILE NO. 14229

Memorandum filed June 29, 1972

*Omar H. Shepard, Jr.,* of Willimantic, for the plaintiffs.

*Garrity, Walsh & Diana,* of Manchester, and *Robert J. Haggerty,* of Willimantic, for the defendant.

WRIGHT, J. The plaintiffs, owners of a house and land on Hunt Road in the town of Columbia, have sued the town in nuisance and trespass for the alleged drainage of water, and other noxious substances, from a ditch and drainpipe along and under Hunt Road, in which suit the plaintiffs claim a temporary injunction, a permanent injunction, and damages.

The defendant town, in its cross complaint, complains that the plaintiffs blocked the drainpipe, or culvert, after taking possession of the house and lot in December, 1969, which blocking has caused a condition hazardous to the health and welfare of the inhabitants and travelers in the area. In its cross complaint, the town claims an injunction and damages.

At the request of counsel, the court viewed the premises and general area on a rainy day, accompanied by counsel, the plaintiffs, the town selectmen, and various engineers and builders.

From the evidence adduced at trial, and from the court's observation at the scene, it is clear that the obstruction of the culvert, admittedly done by the plaintiffs in August, 1970, in grading their yard, has caused a flooding of Hunt Road on wet days, and in particular this has caused a serious traffic hazard during the winter season when the surface water has frozen. Accordingly, on the cross complaint, an injunction is issued against the plaintiffs, enjoining them from interfering with the flow of water through the culvert.

Upon observance of the aforesaid injunction, the situation will revert to the conditions prevailing prior to August, 1970. The court now has the duty to determine whether there was at that time an appreciable amount of water, and other noxious substances, flowing from the culvert and interfering with the plaintiffs' enjoyment of their home and yard, and, if such was the case, whether the town of Columbia was legally responsible for such flowage.

In this connection the town cites § 13a-138 of the General Statutes, which allows municipalities to drain water from highways upon or through private land. The plaintiffs, however, stress the requirement in the statute to the effect that the draining shall be done only "so far as necessary," the requirement to the effect that the town shall so drain as to do the "least damage" to such land, and the further requirement that the statute shall not be "so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house, or into or upon yards and enclosures used exclusively for the storage and sale of goods and merchandise."

In this connection the plaintiffs cite the leading case of *Torrington* v. *Messenger,* 74 Conn. 321. And for the proposition that a preexisting drainage by a municipality does not prevent a property owner who thereafter erects a building from complaining about interference by the municipality with the enjoyment of such building, the plaintiffs cite *Sozanska* v. *Stratford,* 112 Conn. 563, and *Pendergast* v. *Colebrook,* 5 Conn. Sup. 487.

The evidence in the case indicates that prior to the blocking of the culvert by the plaintiffs, water, and foreign substances, flowed from the culvert easterly across the plaintiffs' driveway into the plaintiffs' garage, with some seepage into the cellar.

The defendant claims that when the plaintiffs graded the property in August, 1970, the changing of the land contours and the removal of trees caused certain drainage problems that did not exist prior to that time. The court finds this claim to be true, to a limited extent, particularly because the removal of trees left soft spots or depressions that absorb water.

Kent Healey, a professional engineer, testified that a drainage system could be installed from the culvert, which system would go under the plaintiffs' driveway, would lead down the south side of the property and away from the house, and would ultimately diffuse the water into rear lands. The cost of such a drainage system would be approximately $1380, depending on whether it was installed largely by pipes or partly by pipes and swale.

The court finds that two-thirds of the drainage trouble was the responsibility of the defendant town, and that one-third of the responsibility rests with the plaintiffs, who made certain alterations in the natural contours of the land.

Accordingly, on the complaint, the court finds that while the equities do not call for an injunction, the plaintiffs may recover from the defendant town damages in the amount of $920.

As to the assessment of costs, the court examined all the facts to determine where the prime responsibility lies. The court recognizes that the law does not generally approve of the policy of individuals' taking the law into their own hands, as the plaintiffs did in blocking the culvert. It is generally held, however, that a private individual may enter upon the land of another, after demand, at a reasonable time and in a reasonable manner, to abate a nuisance which affects the actor's possessory interest in his land. Prosser, Torts (4th Ed.), p. 591. And a

private individual may even abate a public nuisance where some special harm to him is threatened. See *Edward Balf Co.* v. *Hartford Electric Light Co.*, 106 Conn. 315.

In the present case, the court finds that the plaintiffs gave timely protests to the town concerning the flooding of their lands, and further finds that there was a sufficient emergency to warrant the plaintiffs' taking measures to alleviate the situation, even though the closing of the culvert gave only partial relief.

In view of all the circumstances of the case, the court finds that the plaintiffs are entitled to recover their legal costs.