PAMELA J. ANDROSS ET AL. *v.* TOWN OF WEST HARTFORD ET AL.
(SC 17742)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 17, 2007—officially released January 29, 2008

*Leon M. Rosenblatt,* for the appellants (plaintiffs).

*Joseph A. O'Brien,* corporation counsel, for the appellees (named defendant et al.).

*Brian R. Smith,* with whom was *Karen A. L. Perry,* for the appellee (defendant Ginsburg Development CT, LLC).

*Robin Messier Pearson,* for the appellees (defendant Mark Investments, LLC, et al.).

*Opinion*

KATZ, J. The plaintiffs, certain residents of the Elmwood section of the town of West Hartford (town), appeal from the judgment of the trial court granting the motions of the defendants, the town, four town officials and three private development firms, to dismiss the action for lack of standing and, hence, subject matter jurisdiction.[1] The plaintiffs had sought declaratory and injunctive relief to prevent the conveyance of public park land to a private developer, to prevent the commercial development of this land and another parcel in Elmwood and to obtain the town's compliance with a traditional neighborhood design ordinance (neighborhood ordinance) enacted for the benefit of Elmwood residents. The plaintiffs contend that the trial court improperly applied an aggrievement analysis that has no application outside of administrative appeals, under which the court required them to demonstrate an injury

[1] The plaintiffs in this action are: Pamela J. Andross; Brian S. Caron; Patti Sanko-Lowry; Kathleen Kennedy; Marleen Grandia; Larry Baker; and Thomas Tague. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We note that the plaintiffs have represented to this court that Andross and Caron have not joined in this appeal, but also have not withdrawn from the case.

The defendants in this action are: the town; four town officials in their official capacities at the time in question, Barry M. Feldman, town manager, James Francis, town treasurer and town director of the department of financial services, Tammy Daniels-Bradley, town purchasing agent, and Norma Cronin, town clerk and clerk of the town council; and three developers, Ginsburg Development CT, LLC, Mark Investments, LLC, and Nixon Plainville, LLC. References herein to the town and its officials are to the town defendants.

different from that sustained by the community as a whole. Rather, they contend, the trial court should have applied the standing analysis applicable to independent actions, under which they need to prove only that they have suffered an injury in fact that falls within the zone of interest of the laws claimed to have been violated. We affirm the trial court's judgment.

The plaintiffs' amended complaint alleges the following facts, which we accept as true for purposes of the motions to dismiss. The Elmwood section of the town is an area of mixed uses, ranging from heavy industry to single-family homes. In 1996, many residents of Elmwood successfully mobilized to oppose the town's approval of a proposed supermarket. Because of the efforts of these residents, the town adopted a plan to develop Elmwood in a manner that would improve the relationships among residential, commercial, industrial and public areas. In May, 1998, the West Hartford town council (town council) adopted the neighborhood ordinance, entitled "An Ordinance Establishing a Traditional Neighborhood Design District for Elmwood Center," now codified at § 177-44.1 of the West Hartford Code. The stated purpose of the neighborhood ordinance is: "[T]o encourage the development of fully integrated, mixed use, pedestrian-oriented neighborhoods. The intent is to minimize traffic congestion, suburban sprawl and environmental degradation. The Traditional Neighborhood Design District diversifies and integrates land uses within close proximity to each other and provides for the daily recreational and shopping needs of the residents. The Traditional Neighborhood Design District is a sustainable, long-term development which enhances the quality of life to ensure the highest possible economic and social benefits for all residents." West Hartford Code § 177-44.1 (A). The neighborhood ordinance applies under the following condition: "If any parcel of property within the Traditional Neighborhood

Design District is proposed to be improved to an extent greater than 50 [percent] of its fair market value, as determined by the Director of Assessments, then such parcel shall be developed in compliance with the requirements of this section." West Hartford Code § 177-44.1 (C).

On or about April 24, 2003, the town council voted to convey a parcel of public property in Elmwood to the defendant Ginsburg Development CT, LLC (Ginsburg), for the development of a 148 unit condominium complex (condominium parcel). The condominium parcel, approximately 1.52 acres in size, formerly was a portion of the property known as James Talcott Junior High School, located at 999 Quaker Lane South. The condominium parcel is part of Beachland Park, which is a park dedicated for the benefit of the public. It is the site of public tennis courts and is a buffer between developed property and the home of two of the plaintiffs, Pamela J. Andross and Brian S. Caron.

At some other unspecified time, the defendants Mark Investments, LLC (Mark), and Nixon Plainville, LLC (Nixon), began development on another parcel of land in the Elmwood section, the site of the former Elm Theater, located at 1110 New Britain Avenue. Mark and Nixon were developing the property for the construction of a Walgreens pharmacy (pharmacy parcel).

The record reveals the following additional undisputed facts and procedural history concerning the litigation involving these two parcels. Two zoning appeals involving the subject properties preceded the present action. In May, 2003, the plaintiff Patti Sanko-Lowry filed an administrative appeal from the decision of the town council, sitting as the town's zoning authority, approving Ginsburg's application to build the 148 unit subdivision on the condominium parcel. See *Sanko-Lowry* v. *West Hartford*, Superior Court, judicial district

of Hartford, Docket No. CV 030825381S (November 17, 2003) (*Sanko-Lowry I*).[2] Sanko-Lowry claimed that the application did not conform to the neighborhood ordinance and that the town wrongfully had permitted the conveyance of the parcel as part of the application because certain voting and notice requirements had not been met. In July, 2003, Sanko-Lowry and several other plaintiffs to this action filed an administrative appeal from the decision of the town zoning board of appeals sustaining the site plan approval for the development of the pharmacy parcel. See *Sanko-Lowry* v. *West Hartford*, Superior Court, judicial district of Hartford, Docket No. CV 030827307S (April 14, 2004) (*Sanko-Lowry II*). In that action, the plaintiffs similarly sought equitable relief to force compliance with the requirements of the neighborhood ordinance. The plaintiffs also asserted claims relating to the condominium parcel, but thereafter withdrew those claims.[3]

Thereafter, the defendants in *Sanko-Lowry I* and *Sanko-Lowry II* filed motions to dismiss the zoning appeals for, inter alia, lack of standing. In memoranda of decision separately issued in each case, the trial court, *Berger, J.*, dismissed the actions for lack of sub-

[2] In *Sanko-Lowry I*, the town was named as the defendant, and Ginsburg and WHP Realty, LLC, an applicant to the condominium development approval that is not a party to the present action, intervened as defendants.

[3] The *Sanko-Lowry II* decision does not indicate which of the plaintiffs in the present action were plaintiffs in that action, but it does indicate that the town, the town manager and the clerk of the zoning board of appeals were named as defendants. According to the memorandum of decision in that case, the operative complaint had sought: (1) an appeal from the zoning board of appeals' decision dismissing their zoning appeal for lack of standing; (2) declaratory relief on actions concerning the pharmacy and condominium parcels; (3) mandamus relief to apply the neighborhood ordinance to both parcels; (4) a declaratory judgment that the conveyance of the condominium parcel was in violation of article first, § 1, of the state constitution; and (5) an injunction to require application of the neighborhood ordinance to both properties. The plaintiffs in *Sanko-Lowry II* withdrew all claims pertaining to the condominium parcel at a hearing on the defendants' motion to dismiss.

ject matter jurisdiction. In *Sanko-Lowry I*, Judge Berger concluded with respect to the actions pertaining to the condominium parcel that Sanko-Lowry was not statutorily aggrieved under General Statutes § 8-8 (a) (1), that her generalized concerns about increased traffic did not satisfy classical aggrievement because such concerns were no different from those of the public at large and that her other concerns did not meet the requirements for taxpayer standing. In *Sanko-Lowry II*, Judge Berger concluded with respect to the claims pertaining to the pharmacy parcel that, inter alia, the plaintiffs were not statutorily aggrieved and that their claim of depreciated property values was too speculative to establish classical aggrievement. The plaintiffs in *Sanko-Lowry II* filed a petition for certification to appeal from the trial court's judgment dismissing their appeal, which the Appellate Court denied; no petition for certification to appeal was filed from the judgment dismissing the appeal in *Sanko-Lowry I*.

In December, 2003, during the pendency of the administrative appeal in *Sanko-Lowry II*, the plaintiffs commenced the present action. In count one of their amended complaint, the plaintiffs alleged that the town's decision to convey public park land was unlawful because: (1) the town had failed to comply with certain procedural requirements of the town charter governing the disposal of surplus town property; and (2) the conveyance would constitute an exclusive public emolument in violation of article first, § 1, of the state constitution.[4] In count two, the plaintiffs alleged generally that the development of the condominium and pharmacy parcels violates the neighborhood ordinance and specifically that the town officials improperly had

[4] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

refused to implement the ordinance by: (1) purposely relying on outdated financial data to determine that the pharmacy parcel was not being improved to an extent greater than 50 percent of its fair market value, the dispositive factor in determining whether the parcel must be developed in compliance with the ordinance; and (2) determining that the condominium parcel is in a special design district that "trumps" the neighborhood ordinance.[5] The plaintiffs claimed that the proposed development of the two parcels would injure them because of the loss of public park land, greater traffic congestion, suburban sprawl, environmental degradation and decreased property values. By way of relief, the plaintiffs sought to enjoin the town from transferring the park land to Ginsburg and to enjoin the development of both parcels. They also sought a declaratory judgment that, inter alia, the town defendants had failed to comply with the requirements of the neighborhood ordinance and the town charter, as well as an order mandating compliance with that ordinance.

Thereafter, Mark and Nixon filed a motion to dismiss the claims regarding the pharmacy parcel for lack of subject matter jurisdiction. They contended that: (1)

[5] In paragraph 29 (e) of their amended complaint, the plaintiffs have asserted several vague allegations related to their claim that the town has refused to implement the neighborhood ordinance, including an allegation that the corporation counsel, assistant corporation counsel and the town council had "failed and refused to comply with chapter XII, § 5 (d), of the [town] [c]harter in connection with [Ginsburg's condominium] project by failing to take a super majority vote." In contravention of our rules of practice, the plaintiffs have not provided to this court the text of this provision of the town charter; see Practice Book § 67-4 (e); and, according to the copy of the town's charter that we have obtained, chapter XII, § 5 (d), does not contain any super majority voting requirements. We note that § 5 generally addresses procedures to amend zoning ordinances, and it is unclear from the plaintiffs' allegations whether they are contending that there was an improper legislative action. We will not speculate either as to whether the plaintiffs intended to refer to some other provision in the charter or as to the nature of this claim.

the plaintiffs were not aggrieved by the zoning decision permitting development of that parcel; (2) all of the plaintiffs except Sanko-Lowry had failed to exhaust administrative remedies regarding said zoning decision; and (3) the plaintiffs are collaterally estopped from raising the same issues on which Judge Berger had determined they lacked standing in the zoning appeal. The town defendants also filed a motion to dismiss the action regarding both parcels for lack of subject matter jurisdiction. They claimed, in addition to the three grounds raised by Mark and Nixon in their motion to dismiss, that the plaintiffs were not entitled to bring the action because zoning appeals were the statutorily authorized relief for the issues presented. They also claimed that the first count of the complaint had been rendered moot by the completed conveyance of the condominium parcel to Ginsburg.

In a memorandum of decision dated November 1, 2004, the trial court, *Beach, J.*, ruled on the motions to dismiss only as they related to the pharmacy parcel, deferring ruling on the claims related to the condominium parcel upon request of the parties due to ongoing negotiations. The court granted the defendants' motion to dismiss the claims relating to the pharmacy parcel, concluding that the plaintiffs had failed to allege or demonstrate that they specifically had been harmed in a way substantially different than members of the general public. The court further concluded that "the defendants' position . . . [was] fortified by the concepts of collateral estoppel and res judicata" because the parties and issues were the same as in the zoning appeal. The court rejected the plaintiffs' contention that standing is broader in an independent action than in a zoning appeal, requiring only a showing that the claims fall within the applicable law's zone of interests, noting that such an approach presumably would confer standing on any property owner in a designated zone to challenge

via an independent action any administrative decision affecting another property in that zone. The court noted the absence of any precedent wherein a party had not been statutorily or classically aggrieved but nonetheless had been permitted to pursue an independent challenge to a zoning authority's decision. The court concluded that, in this context, residents of a neighborhood do not have a cognizable interest sufficient to bestow standing in the absence of the traditional aggrievement qualification, which the plaintiffs had not met.

On September 12, 2005, Ginsburg filed a motion to dismiss the remaining claims as to the condominium parcel, which the town defendants joined. The trial court, *Mary R. Hennessey*, judge trial referee, granted the motion. The trial court rejected the plaintiffs' contention that, as taxpayers, their allegations of decreased property values, traffic congestion, suburban sprawl and environmental degradation in the form of noise and pollution constitute damages sufficient to establish standing to challenge municipal misconduct. The court pointed to the absence of any allegation that conveyance of the property or development of the condominium complex directly or indirectly has increased the plaintiffs' taxes or otherwise injured them in their capacity as taxpayers. The court also adopted Judge Beach's reasoning in his decision dismissing the claims relating to the pharmacy parcel, wherein he had rejected the plaintiffs' contention that standing to bring an independent action differs from the aggrievement required to bring an administrative appeal. Thereafter, Judge Hennessey rendered judgment for the defendants dismissing the action. This appeal followed.

The plaintiffs claim that, in determining that they lack standing, the trial court applied an improper test. They contend that the court should not have applied the aggrievement analysis used in zoning and other administrative appeals, requiring that they demonstrate that

they have suffered an injury that is different from that of the community, to their independent action. The plaintiffs contend that a requirement that they demonstrate that they have suffered an injury that is "unique" is contrary to standing jurisprudence, wherein "the concern is to distinguish those who have suffered some individual injury from those asserting only the common right of the entire public that the law be obeyed." *William Penn Parking Garage, Inc.* v. *Pittsburgh*, 464 Pa. 168, 203, 346 A.2d 269 (1975). The plaintiffs contend that the trial court should have applied the two part test recognized in *Ducharme* v. *Putnam*, 161 Conn. 135, 139, 285 A.2d 318 (1971), and *Assn. of Data Processing Service Organizations, Inc.* v. *Camp*, 397 U.S. 150, 152–53, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970), wherein plaintiffs need to demonstrate only that they have suffered an injury in fact and that the interests they seek to protect are within the zone of interests of the laws that form the basis of their claims. The plaintiffs contend that they have demonstrated such injury in fact through the alleged loss of: (1) the benefits the neighborhood ordinance was intended to promote—less pollution, traffic congestion, environmental degradation and suburban sprawl; (2) a public park for recreational and aesthetic purposes; and (3) an opportunity to be heard, as required under the town charter, before the town divested itself of the public park land. They further contend that their claims fall within the zone of interests of the various laws that they contend were violated by the town defendants' actions: the neighborhood ordinance, the town charter and article first, § 1, of the state constitution.

In response, the defendants contend that the zone of interests test does not excuse the plaintiffs from establishing that they have been affected specially by the actions at issue, and that the plaintiffs failed to do so because the alleged harms are concerns of the public

at large. They also assert that the action should be dismissed on grounds of mootness because the town already has conveyed the condominium parcel to Ginsburg and the development of both parcels at issue is either completed or substantially completed.[6] Finally, the defendants contend that the trial court's judgment should be affirmed because the plaintiffs have asserted a de facto zoning appeal and the doctrine of res judicata bars relitigation of the issue of standing, which was decided adversely to them in *Sanko-Lowry I* and *Sanko-Lowry II*. We conclude that, under the circumstances of this case, we need not reconsider established case law requiring that the plaintiffs demonstrate an injury different from the community generally and that the trial court properly dismissed the plaintiffs' action for lack of subject matter jurisdiction.

We begin with some well settled principles regarding standing and its aggrievement component, as recently reaffirmed in *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 287–89, 933 A.2d 256 (2007). "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its con-

---

[6] The record reflects that, on June 7, 2004, the town conveyed the condominium parcel to Ginsburg. It also is undisputed that construction of the pharmacy is complete. At oral argument before this court, in addressing the issue of mootness, the plaintiffs contended that practical relief still could be afforded to them by way of an order that the town defendants ensure that the parcels were developed in greater compliance with the neighborhood ordinance. Moreover, the plaintiffs claimed that their request for injunctive relief is broad enough to encompass an order declaring the conveyance void. The trial court did not address the issue of mootness. Thus, the record does not contain, nor have the parties conceded, adequate facts from which we can determine whether practical relief can be afforded. Accordingly, we cannot, and indeed need not in light of our conclusion on other jurisdictional issues, determine whether this appeal has been rendered moot.

clusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Id., 287–88.

In addition to establishing standing through statutory or classical aggrievement, this court has recognized taxpayer standing. "The plaintiff's status as a taxpayer does not automatically give [it] standing to challenge alleged improprieties in the conduct of the defendant town. . . . The plaintiff must also allege and demonstrate that the allegedly improper municipal conduct cause[d] [it] to suffer some pecuniary or other great injury. . . . It is not enough for the plaintiff to show that [its] tax dollars have contributed to the challenged project . . . . [T]he plaintiff must prove that the project has directly or indirectly increased [its] taxes . . . or, in some other fashion, caused [it] irreparable injury in [its] capacity as a taxpayer." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 13, 901 A.2d 649 (2006).

The plaintiffs do not contend that they have been authorized by statute to bring this action.[7] Moreover, the plaintiffs appear to have disavowed taxpayer standing, one theory of standing under which an injury universally may be shared by the community. See id. (increased taxes provide standing to any taxpayer); see also id., 18–25 (declining to decide, under facts of case, whether taxpayer standing for "other great injury" could be predicated on allegations of misappropriation of taxpayer funds). The only finding by the trial court as to taxpayer standing—that the plaintiffs had failed to allege that the conveyance of town land and its devel-

---

[7] We note that, despite their claim of environmental degradation, including "pollution," the plaintiffs have not alleged a violation of the state's Environmental Protection Act of 1971, General Statutes § 22a-14 et seq., which, inter alia, authorizes "any person" to bring an action "for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." General Statutes § 22a-16.

opment "have directly or indirectly increased their taxes or otherwise injured them in their capacity as taxpayers"—is uncontested. Rather, the plaintiffs contend in their brief to this court that the trial court's "discussion of taxpayer standing and of the requirement of 'pecuniary harm or other great injury' . . . is straight out of administrative appeal aggrievement jurisprudence and has no place in standing analysis." We note, however, that the trial court's discussion was entirely in accord with the taxpayer standing test recently articulated in *West Farms Mall, LLC* v. *West Hartford*, supra, 279 Conn. 13, which addressed an independent action also contesting the legality of a conveyance of town land to a private developer.

Thus, to have standing to bring this action, the plaintiffs necessarily must establish that they are classically aggrieved. In other words, they must demonstrate a specific, personal and legal interest in the subject matter of the controversy and that the defendants' conduct has specially and injuriously affected that specific personal or legal interest. We note that, contrary to the plaintiffs' assertion, this classical aggrievement test, which was the one articulated by the trial court in the present case, has been cited in numerous independent actions and thus is not limited to zoning or other administrative appeals. See, e.g., *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 803, 925 A.2d 292 (2007); *In re Christina M.*, 280 Conn. 474, 481, 908 A.2d 1073 (2006); *West Farms Mall, LLC* v. *West Hartford*, supra, 279 Conn. 25; *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 369, 880 A.2d 138 (2005); *Broadnax* v. *New Haven*, 270 Conn. 133, 154, 851 A.2d 1113 (2004); *State* v. *Long*, 268 Conn. 508, 531–32, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

The crux of the plaintiffs' claim, however, is not that they need not establish specific, personal injury. Rather,

it is that the requisite injury in an independent action need not be unique, that is, different from that suffered by the public at large, as is required in administrative actions generally and zoning appeals specifically.[8] This court, however, previously rejected a similar claim. In *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 337–38, 340–41, 589 A.2d 356 (1991) (*CBIA II*), the plaintiffs, an association of employers who provide health insurance to their employees, an insurer and an association representing insurers, brought an action against the defendants, the commission on hospitals and health care (commission) and thirty-two hospitals, seeking a declaratory judgment that the commission's decisions increasing rates to be charged by the hospitals above those initially set by the commission were improper and void. Before the plaintiffs filed the declaratory judgment action, they had filed administrative appeals from the commission's decisions, which were dismissed by the trial court for lack of aggrievement. Id.; see *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 730–31, 573 A.2d 736 (1990) (*CBIA I*). In that administrative appeal, this court had held that the plaintiffs were not aggrieved

---

[8] Although the plaintiffs also contend that the trial court improperly failed to apply the zone of interests test; see *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 160, 699 A.2d 142 (1997) (stating zone of interest test); *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 344–45, 663 A.2d 1011 (1995) (same); it is clear that this contention is made only in furtherance of their claim that unique injury is not required for standing. Therefore, we do not address separately the application of the zone of interests test. See, e.g., *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 537 n.10, 833 A.2d 883 (2003) (noting plaintiffs' claim that trial court improperly had failed to apply zone of interests test but concluding that test was not pertinent to dispositive issue in appeal, namely, aggrievement); see also *Sierra Club* v. *Morton*, 405 U.S. 727, 733 n.5, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) (concluding that court need not consider whether claims fall within zone of interests of statutes implicated because plaintiffs had failed to establish injury in fact).

because they had "failed to demonstrate a legal interest in the subject matter of the decisions approving the settlement agreements that can be distinguished from the interest of the general public in hospital rate increases."[9] *CBIA I*, supra, 734. In their subsequent declaratory judgment action, the defendants contended that the plaintiffs lacked standing to bring that action for the same reasons that they had lacked standing in the administrative appeal. *CBIA II*, supra, 342. The plaintiffs asserted in response that the principles applied in the administrative appeals were not applicable and that more liberal standing rules applied in declaratory judgment actions. Id., 343–44. This court rejected those contentions, stating: "We recently held [in another declaratory judgment action] that a party who was 'simply a member of the general public who has not demonstrated how she was harmed in a unique fashion' by the conduct she had challenged in a declaratory judgment action had failed to establish 'a colorable claim of direct injury,' and accordingly lacked standing

---

[9] The court explained: "The fact that [the plaintiffs] are obligated contractually to pay the rates established by [the commission] in these decisions gives them no more standing than their policyholders or other contractual beneficiaries would have to challenge the decision. These beneficiaries, in turn, have no greater interest than those members of the general public who have no health insurance and must pay the rates established. The financial impact of an increase in hospital rates is borne by all members of the public when they require hospitalization and are presented with bills for the services rendered. The agreements the plaintiffs have made to bear or share these hospitalization expenses with their policyholders or other contractual obligees do not create aggrievement for the purpose of an appeal unless those who pay directly for their hospitalization would be similarly aggrieved." *CBIA I*, supra, 214 Conn. 730–31.

The court also rejected the plaintiffs' claim that they had a unique legal interest in the rate order decisions by virtue of § 19a-165q-45 (b) of the Regulations of Connecticut State Agencies, because that regulation placed "payers" such as the plaintiffs on an equal par with "other interested parties" such as members of the general public and could not, therefore, be construed to elevate the status of payers for aggrievement purposes above that of members of the general public. (Internal quotation marks omitted.) Id., 732–33.

to maintain the action. . . . *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990). For the reasons set forth in *CBIA I*, neither the plaintiffs in this case nor their members have an interest in [the commission's] decisions revising the original rate orders that is distinguishable from that of the general public. Consequently, the plaintiffs lacked standing to challenge the decisions in a declaratory judgment action, and the action was properly dismissed." *CBIA II*, supra, 348.

We are mindful that the case on which the court relied for this "unique" injury proposition, *Monroe* v. *Horwitch*, supra, 215 Conn. 473, presented facts in which the plaintiff had suffered *no* direct injury, rather than a direct injury shared by the public.[10] See also *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 467–68, 673 A.2d 484 (1996) (contrasting direct harm in that action for injunctive relief with "unique" injury language cited in *Monroe* v. *Horwitch*, supra, 473). Indeed, the plaintiff in *Monroe* simply was attempting to ensure general compliance with the law, in contravention to the well established principle that " 'common concern for obedience to law' " is not a direct injury that supports standing. *Federal*

---

[10] In *Monroe* v. *Horwitch*, supra, 215 Conn. 472, the plaintiff was a private citizen attempting to act as a representative of persons who allegedly were dissatisfied with the statewide grievance committee's handling of their complaints against attorneys. The plaintiff sought to present the defendant statewide bar counsel to the trial court for discipline, alleging "that the defendant had denied grievance complainants 'due process and equal protection of the law' by failing to enforce time limits for the processing of grievance complaints. In addition, the plaintiff alleged that the defendant had unconstitutionally exercised 'judicial powers of a judge' by dismissing complaints, issuing reprimands to lawyers and deciding which complaints should be acted upon by the court." Id., 470. The plaintiff, however, had not filed a grievance complaint against an attorney since 1985, four years prior to the trial court's ruling on the motion to dismiss. Id., 472. The court concluded: "[T]he plaintiff has not established a colorable claim of *direct* injury. She is simply a member of the general public who has not demonstrated how she was harmed in a unique fashion by the present structure and functioning of the statewide grievance process." (Emphasis in original.) Id., 473.

*Election Commission* v. *Akins*, 524 U.S. 11, 23, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998), quoting *L. Singer & Sons* v. *Union Pacific Railroad Co.*, 311 U.S. 295, 303, 61 S. Ct. 254, 85 L. Ed. 198 (1940); see also *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 572–78, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (injury to interest in seeing that certain procedures are followed not normally sufficient by itself to confer standing); *Perkins* v. *Lukens Steel Co.*, 310 U.S. 113, 125, 60 S. Ct. 869, 84 L. Ed. 1108 (1940) (plaintiffs lacked standing because they failed to show injury to "a particular right of their own, as distinguished from the public's interest in the administration of the law"); *Massachusetts* v. *Mellon*, 262 U.S. 447, 488, 43 S. Ct. 597, 67 L. Ed. 1078 (1923) (party may not merely show that "he suffers in some indefinite way in common with people generally").

We also are mindful that our use of the term "injury in fact," which we have imported on occasion from the United States Supreme Court's standing jurisprudence, may have created some confusion as to whether "aggrievement" is substantially the same as "injury in fact," as that term has been interpreted by the United States Supreme Court. See *Ferguson Mechanical Co.* v. *Dept. of Public Works*, 282 Conn. 764, 772, 924 A.2d 846 (2007) ("[a] party seeking review of a state agency's action . . . must establish more than aggrievement [injury in fact]; he must establish that the injury resulted from a final decision in a contested case" [internal quotation marks omitted]); *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 236 Conn. 465–67 (citing and applying injury in fact test from *Lujan* v. *Defenders of Wildlife*, supra, 504 U.S. 560–61); *Merrimac Associates, Inc.* v. *DiSesa*, 180 Conn. 511, 517, 429 A.2d 967 (1980) (noting that if certain conduct was established, "the result would constitute injury in fact sufficient to satisfy the requirements of aggrievement" [internal quotation marks omitted]); *Old Rock Road*

*Corp.* v. *Commission on Special Revenue,* 173 Conn. 384, 387, 377 A.2d 1119 (1977) (citing Connecticut aggrievement standard and stating that "[s]imilarly, under federal standards, to obtain judicial review of a decision of a federal agency a plaintiff must demonstrate an 'injury in fact' "). In its more recent standing jurisprudence, the United States Supreme Court has held that the requisite injury in fact to support standing can be widely shared, as long as it is a direct, concrete injury, rather than an abstract injury. See *Federal Election Commission* v. *Akins,* supra, 524 U.S. 24–25 ("Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the [c]ourt has found 'injury in fact.' . . . We conclude that, similarly, the informational injury at issue here [failure to disclose information regarding an alleged political committee under the Federal Election Campaign Act of 1971], directly related to voting, the most basic of political rights, is sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." [Citations omitted.]); *Public Citizen* v. *Dept. of Justice,* 491 U.S. 440, 449–50, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) ("[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under [the Federal Advisory Committee Act] does not lessen [the] appellants' asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue").

This court has recognized, however, that "[w]e are not required to apply federal precedent in determining the issue of aggrievement." *Mystic Marinelife Aquar-*

*ium, Inc.* v. *Gill*, 175 Conn. 483, 494, 400 A.2d 726 (1978); accord *New Haven* v. *Public Utilities Commission*, 165 Conn. 687, 703, 345 A.2d 563 (1974) ("More significant than the inapplicability of the [federal] case on which the plaintiffs rely, however, is the fact that the issue of aggrievement is not a federal issue, but a requirement of Connecticut law. It has long been established that aggrievement in Connecticut requires 'a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest.' "); see also *State* v. *McElveen*, 261 Conn. 198, 212, 802 A.2d 74 (2002) (Noting in rejecting the adoption of the United States Supreme Court's injury in fact test for mootness purposes in favor of a more liberal standard: "[U]nlike the United States constitution, the state constitution does not confine the judicial power to actual cases and controversies. Rather, the 'jurisdiction of [the] courts shall be defined by law.' Conn. Const., art. V, § 1. . . . Our mootness jurisprudence, therefore, has evolved under our common law." [Citation omitted; internal quotation marks omitted.]).

It is significant that the principle on which this court relied in *CBIA I* and *CBIA II* has deep roots in our common-law jurisprudence. See, e.g., *Belford* v. *New Haven*, 170 Conn. 46, 51, 364 A.2d 194 (1975) (seeking to enforce restrictive covenant in deed of public land), overruled in part on other grounds by *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 73 n.7, 441 A.2d 68 (1981); *Truesdale* v. *Greenwich*, 116 Conn. 426, 431, 165 A. 201 (1933) (public nuisance); *Taylor* v. *Cooke*, 113 Conn. 162, 165–66, 154 A. 349 (1931) (same); *Cole* v. *Austin*, 107 Conn. 252, 268, 140 A. 108 (1928) (same); *Edward Balf Co.* v. *Hartford Electric Light Co.*, 106 Conn. 315, 327–28, 138 A. 122 (1927) (same); *Wheeler* v. *Bedford*, 54 Conn. 244, 248, 7 A. 22 (1886) (removal of nuisance and encroachment on public land); see also *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 482–

84, 138 A. 483 (1927) (seeking to compel neighboring property owner's compliance with zoning regulation). This court has suggested that, when injury is shared by the community, the proper party to vindicate public interests may be the attorney general, the state's attorney or the town itself. See *Milford* v. *Commissioner of Motor Vehicles*, 139 Conn. 677, 681, 96 A.2d 806 (1953); *Truesdale* v. *Greenwich*, supra, 432; but see *Wheeler* v. *Bedford*, supra, 249 (noting concern for circumstances in which public authorities are unwilling to institute proceedings). This court also has suggested that a town's administrative body is the proper party to ensure the protection of public interests falling within the scope of its authority. See *Munhall* v. *Inland Wetlands Commission*, 221 Conn. 46, 56, 602 A.2d 566 (1992); *Tyler* v. *Board of Zoning Appeals*, 145 Conn. 655, 658, 145 A.2d 832 (1958); *Rommell* v. *Walsh*, 127 Conn. 16, 21–22, 15 A.2d 6 (1940). Notably, many of the cases in which we have rejected standing because the alleged injury was one generally shared by the community involved disputes regarding the use of land. Indeed, the prudential concerns that give rise to this limitation are most evident in zoning disputes, wherein the statutory scheme implicates such a broad range of public concerns that, in the absence of such a limitation, statutory aggrievement essentially would be vitiated. See General Statutes § 8-2 (requiring zoning regulations to, inter alia, "protect the public health, safety, convenience and property values," "lessen congestion in the streets" and consider environmental impact); General Statutes § 8-8 (a) (1) and (b) (providing and setting limits of statutory right of appeal from zoning decisions); see also *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 543, 833 A.2d 883 (2003) (concerns of traffic congestion shared by public).

Therefore, even if we were inclined to reconsider the application of this long-standing limiting principle to

independent actions as the plaintiffs suggest, we are disinclined to do so in the present case for several reasons. We begin with the plaintiffs' claims regarding noncompliance with the neighborhood ordinance, which fall into two categories. Their general allegations that certain town officials never have enforced or implemented the neighborhood ordinance, unaccompanied by any specific claims of wrongdoing, clearly fall within the category of generalized grievances of a failure to adhere to the law. Even under the injury in fact standard that the plaintiffs advocate, such interests are not cognizable for standing purposes. See *Federal Election Commission* v. *Akins*, supra, 524 U.S. 23; *Lujan* v. *Defenders of Wildlife*, supra, 504 U.S. 572–78.

The plaintiffs' specific allegations that development of the condominium and pharmacy parcels violate the neighborhood ordinance constitute issues that fall within the purview of the town's plan and zoning commission and the zoning board of appeals. The neighborhood ordinance is a zoning ordinance. It is located in the zoning chapter of the town's code. See West Hartford Code, c. 177. It expressly provides that the definitions applicable to the zoning chapter apply. See West Hartford Code § 177-44.1 (C). The purpose of the neighborhood ordinance is consistent with the broader goals of the zoning chapter. Compare West Hartford Code §§ 177-44.1 (A) and 177-1. The only provision in the ordinance specifically vesting decision-making authority vests such authority in the plan and zoning commission. See West Hartford Code § 177-44.1 (F) (1) (providing that ordinance design standards "shall be met within the Traditional Neighborhood Design District unless the [p]lan and [z]oning [c]ommission approves a departure from these standards through a special use permit obtained in accord with the requirements of [West Hartford Code] § 177-42"). Indeed, traditional neighborhood ordinances generally are viewed

as land use planning tools. See J. Nolon, *"Golden* and Its Emanations: The Surprising Origins of Smart Growth," 23 Pace Envtl. L. Rev. 757, 781 (2006); B. Ohm & R. Sitkowski, "The Influence of New Urbanism on Local Ordinances: The Twilight of Zoning?" 35 Urb. Law. 783, 786–87, 791–92 (Fall 2003); J. Porter, "Will Property Rights Legislation Endanger Smart Growth Efforts?" 30 Real Est. L.J. 275, 293–94 (Spring 2002); see generally R. Sitkowski, A. Breinich & B. Ohm, "Enabling Legislation for Traditional Neighborhood Development Regulations," Commentary-October 2001, American Planning Association, Planning and Environmental Law, at http://www.planning.org/PEL/commentary/oct-01comm.htm#1. They essentially are in the nature of overlay zones. See General Statutes § 8-2m; *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 218–19, 779 A.2d 750 (2001) (discussing historic overlay zone).

The plaintiffs' specific allegations that the development of the condominium and pharmacy parcels violates the neighborhood ordinance raise claims that fall within the scope of authority of the town's plan and zoning commission: (1) to determine whether the condominium parcel was part of a special design district and, if so, whether that designation "trumped" application of the neighborhood ordinance; and (2) to determine whether application of the neighborhood ordinance to the pharmacy parcel was required because it was being improved to an extent greater than 50 percent of its fair market value.[11] See *Samperi* v. *Plan-*

---

[11] We are mindful that the ordinance provides that the director of assessments determines the fair market value of the parcel. In the present case, the plaintiffs alleged that the town assessor "arbitrarily and capriciously made calculations based on data obtained more than four years previously in order to circumvent the [neighborhood ordinance]." The plaintiffs did not name the town assessor as a defendant, however, in this action. We express no opinion as to whether the zoning board has authority to reject an assessment if presented with evidence that the assessment improperly had been calculated or whether, in such a case, a plaintiff would need to

*ning & Zoning Commission*, 40 Conn. App. 840, 846, 674 A.2d 432 (1996) (addressing challenge to zoning board decision applying subdivision regulation that defendant contended was in conflict with another zoning regulation). The fact that the plaintiffs did not name the town's zoning authorities as defendants does not change the nature of their claims, nor does the fact that they have not challenged expressly the zoning authorities' decisions authorizing the development of the two parcels at issue. The reality is that the plaintiffs are seeking to prevent the development of these parcels, as authorized by the zoning authorities, because the development purportedly does not conform with a zoning regulation.

Moreover, the plaintiffs' lack of standing to pursue administrative appeals in *Sanko-Lowry I* and *Sanko-Lowry II* does not constitute futility that would excuse the necessity of recourse to those procedures. See *Neiman* v. *Yale University*, 270 Conn. 244, 258–59, 851 A.2d 1165 (2004) ("One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. . . . It is well established that [a]n administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief. . . . It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." [Citations omitted; internal quotation marks omitted.]); see also *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 560–61, 529 A.2d 666 (1987) ("This case does not present the situation sometimes found in zoning cases where we have permitted an exception to the exhaus-

bring an independent action against the assessor under some cognizable theory of standing, such as taxpayer standing. In light of the allegations in the present case, however, the only relief, if available, would have been pursuant to the zoning administrative procedures.

tion requirement. . . . This exception requires that a plaintiff make allegations that a zoning violation has resulted in special damage to an individual. . . . The type of harm alleged by the plaintiffs in this case is a generalized injury suffered by all the voters and taxpayers of the town." [Citations omitted.]). Indeed, statutory standing was available to any Elmwood resident who could meet the requirements of § 8-8 (a), and credible evidence to support the plaintiffs' allegations of decreased property values would have established classical aggrievement under our zoning cases. See *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 394, 610 A.2d 620 (1992); *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 381, 311 A.2d 77 (1972); *Berlani* v. *Zoning Board of Appeals*, 160 Conn. 166, 168–69, 276 A.2d 780 (1970). It would be anomalous to excuse the plaintiffs from exhausting administrative remedies because they lacked standing to pursue those remedies in that forum and then permit them to obtain relief in another forum by way of an independent action by applying a less stringent standing requirement. Because we have declined to expand aggrievement in the context of zoning administrative appeals to include injury shared by the community, we similarly decline to do so in the present case.

The plaintiffs' claims relating to the conveyance of the property raise different concerns. The town council was not acting in a zoning capacity when it made the decision to convey public park land to Ginsburg. Indeed, under our case law, the town zoning board would not have authority to determine conclusively whether the town's conveyance of the land constituted an unconstitutional public emolument. See *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 63–64, 808 A.2d 1107 (2002) (declining to accord preclusive effect to zoning board of appeals' findings underlying plaintiff's constitutional claim of inverse condemnation because that would give,

in effect, authority to board to settle constitutional issue in contravention to well established common-law principle that administrative agencies lack authority to determine constitutional questions and because citizen volunteers who compose zoning boards generally are laypersons); see also *West Farms Mall, LLC* v. *West Hartford*, supra, 279 Conn. 13 (analyzing independent action brought by developer alleging that town had conferred unconstitutional emolument on competitor by way of bond financing and conveyance of town land, and concluding that plaintiff had failed to establish taxpayer standing or classical aggrievement).

The claimed injuries arising from the decision to convey the public park land, however, are insufficient to constitute a cognizable basis for standing as alleged, even if we were to consider direct injury shared by the community as a basis for standing. The plaintiffs contend in their appellate brief: "The palpable injuries sustained by the plaintiffs were the loss of public park land in Elmwood where they could recreate or simply look around and enjoy the park. . . . Sanko-Lowry's husband and children used to play tennis there. The plaintiffs also were deprived of the opportunity to speak their minds and oppose the town's divesting itself of the 1.52 acres of Beachland Park."[12]

Although this court has recognized that noneconomic harms can support standing; *Maloney* v. *Pac*, 183 Conn. 313, 321, 439 A.2d 349 (1981); *Gregorio* v. *Zoning Board of Appeals*, 155 Conn. 422, 426, 232 A.2d 330 (1967); we have not addressed definitively whether and to what extent aesthetic or recreational harms can provide a

---

[12] The plaintiffs also contend in their brief that the deprivation of the opportunity to express their opinion and oppose the town divesting itself of the 1.52 acres of Beachland Park was a deprivation of due process. In the absence of any claim in the plaintiffs' complaint that the town defendants violated the plaintiffs' right to due process, we do not address due process implications specifically.

basis for standing in the absence of express statutory authorization to sue to protect such interests. See *Maloney* v. *Pac*, supra, 320 ("The defendants challenge the trial court's holding that the plaintiff has standing to maintain this action by emphasizing that the court also found that the plaintiff had standing because of injuries which were aesthetic, conservational, or recreational. We need not now decide whether the [trial] court was correct in viewing *Mystic Marinelife Aquarium, Inc.* v. *Gill*, [supra, 175 Conn. 483], which relied upon statutory standing, as equally supporting common-law standing for such injuries."); *New Haven* v. *Public Utilities Commission*, supra, 165 Conn. 702 (rejecting appeal from public utilities commission's order authorizing construction of electrical transmission line facilities wherein plaintiffs had claimed standing on basis of recreational and aesthetic interests in part because statute under which they sued made "no reference to the aesthetic, conservational or recreational aspects of power development; and its legislative history furnishes no indication that the legislature intended to base standing on these matters"); *Glendenning* v. *Conservation Commission*, 12 Conn. App. 47, 52, 529 A.2d 727 (concluding that provisions of Inland Wetlands and Watercourses Act and town of Fairfield's regulations would permit plaintiff to assert recreational and aesthetic interests as basis for standing, but only to extent that aggrievement arises from or relates to their impact of challenged activities upon environmental factors required to be considered by agency under those statutory and regulatory provisions), cert. denied, 205 Conn. 802, 531 A.2d 936 (1987). We note that the United States Supreme Court has recognized such interests as cognizable for standing purposes for some time. See, e.g., *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 183, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000); *United States* v. *Students Challenging Regula-*

*tory Agency Procedures*, 412 U.S. 669, 686–87, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973); *Sierra Club* v. *Morton*, 405 U.S. 727, 734, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972); *Assn. of Data Processing Service Organizations, Inc.* v. *Camp*, supra, 397 U.S. 164. We need not decide in the present case, however, whether direct injury to aesthetic or recreational interests can provide a basis for standing in the absence of express statutory authorization to sue to protect such interests because the plaintiffs' allegations fall well short of demonstrating such injury.

The amended complaint alleges: "The [condominium] parcel is part of Beachland Park, which is a park dedicated for the benefit of the public and used by the public, including the plaintiffs. It is the site of public tennis courts and is a buffer between developed property and the home owned by [Andross and Caron]. . . . The subject parcel will be used by [Ginsburg] to build a 148-unit condominium complex which will destroy the buffer, injure the plaintiffs in their use and enjoyment of their property, and injure them in pecuniary and nonpecuniary ways." The complaint does not allege expressly any direct injury to aesthetic or recreational interests. Nor can such interests be inferred from the facts alleged.

With respect to an aesthetic interest, the plaintiffs provide no description of the parcel at issue other than the fact that it is the site of tennis courts and is a "buffer" between developed property and the home of two of the plaintiffs. These qualities do not demonstrate an aesthetic interest under any measure. Cf. *United States* v. *Students Challenging Regulatory Agency Procedures*, supra, 412 U.S. 678, 686–87 (complaint alleging damage to "forests, rivers, streams, mountains, and other natural resources surrounding the Washington [D.C.] metropolitan area . . . [used by the plaintiffs] for camping, hiking, fishing, sightseeing, and other rec-

reational [and] aesthetic purposes" sufficient for standing); *Sierra Club* v. *Morton,* supra, 405 U.S. 728, 734 (complaint alleging that development of area adjacent to national park—area of great natural beauty used almost exclusively for recreational purposes—would "destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park" asserted harm that could constitute injury in fact for standing). The mere designation of the land as part of public park land does not imbue it with aesthetic value. Indeed, a paved parking lot might be on public park land, yet one reasonably could not contend that the loss of a public parking lot implicates an aesthetic interest.

With respect to recreational interests, although the plaintiffs allege that they use Beachland Park generally, they do not allege what this "use" entails, nor do they allege that they use the part of the park land conveyed to Ginsburg. The complaint does not allege that any of the plaintiffs have suffered direct recreational injury in that they have used, or plan to use, the tennis courts. Although the plaintiffs' brief contends that Sanko-Lowry's husband and children had used the tennis courts, there are no allegations or evidence to that effect before this court.[13] Moreover, Sanko-Lowry's husband and children are not plaintiffs to this action, the complaint does not allege that Sanko-Lowry appears in a representative capacity for them, and the plaintiffs cannot vindicate the interests of nonparties. See *Ganim* v. *Smith & Wes-*

---

[13] In their brief to this court, the plaintiffs point to Sanko-Lowry's testimony before the trial court in *Sanko-Lowry I* to support their assertion that Sanko-Lowry's husband and children had used the tennis courts. The plaintiffs represented at oral argument in this court that there had been a stipulation in the trial court that the parties would rely on the evidence presented in the zoning appeals, *Sanko-Lowry I* and *Sanko-Lowry II.* They also acknowledged, however, that, because this alleged stipulation is not in the record, this court could not consider that evidence. Indeed, the transcripts and exhibits from the zoning appeals were not made a part of the record before this court.

*son Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001); *State* v. *Biller*, 190 Conn. 594, 612, 462 A.2d 987 (1983); see also *Sierra Club* v. *Morton*, supra, 405 U.S. 734–35 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). Indeed, the allegations indicate that the value of the tennis courts to the plaintiffs lay only in the buffer they created between developed properties.

It is well settled that "[t]he burden rests with the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 511, 849 A.2d 791 (2004); *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003). "The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." (Internal quotation marks omitted.) *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 580, 668 A.2d 688 (1995); see also *Warth* v. *Seldin*, 422 U.S. 490, 501–502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. . . . At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of [the] plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed."). The plaintiffs concede that they were given an opportunity to present evidence in support of their allegations. See footnote 13 of this opinion. It is clear that direct injury to an

aesthetic or recreational interest was not demonstrated for standing purposes under any standard.

Finally, with respect to the plaintiffs' claim that the loss of an opportunity to be heard at a public hearing before the town disposed of the public land establishes classical aggrievement, we rejected a similar claim in *Edgewood Village, Inc.* v. *Housing Authority,* 265 Conn. 280, 288–93, 828 A.2d 52 (2003), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004). The plaintiffs have not provided a compelling distinction to prompt reconsideration of that reasoning.

The plaintiffs do cite, however, to our long line of cases involving the sale of liquor, under which this court has applied an automatic standing rule. See, e.g., *Alliance Energy Corp.* v. *Planning & Zoning Board,* 262 Conn. 393, 403, 815 A.2d 105 (2003); *Jolly, Inc.* v. *Zoning Board of Appeals,* 237 Conn. 184, 186–87, 676 A.2d 831 (1996); *O' Connor* v. *Board of Zoning Appeals,* 140 Conn. 65, 71–72, 98 A.2d 515 (1953); *Beard's Appeal,* 64 Conn. 526, 534, 30 A. 775 (1894). The plaintiffs contend that, whereas policy concerns led the court to conclude that the dangers of alcohol sale and consumption were so serious as to require that anyone in the community should be able to force town officials to comply with laws regulating this matter; see *Alliance Energy Corp.* v. *Planning & Zoning Board,* supra, 400 (citing "inherent public policy concerns regarding the societal costs of policing liquor activity in our communities"); twentieth century concerns should require that automatic standing be provided to challenge a town's failure to implement its rules on urban sprawl. Although we are not oblivious to the social and environmental costs attendant to encroachment on open spaces and increased development of nonpedestrian friendly neighborhoods, we decline to extend the automatic standing rule to allow any citizen to bring an action to challenge any decision implicating urban sprawl. Indeed, unlike

liquor laws that clearly are limited in scope and application, given the wide variations in the definition of "urban sprawl,"[14] the practical consequences of such a rule essentially could eviscerate the standing requirements under many of our laws. Accordingly, we conclude that the trial court properly dismissed the plaintiffs' action for lack of standing.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[14] The plaintiffs appear to use the terms "urban sprawl" and "suburban sprawl" interchangeably. They do not define either term, and apparently many different meanings have been ascribed to the term "sprawl," some of which seem rather ill-defined and malleable. See A. Helling, "Advocate for a Modern Devil: Can Sprawl Be Defended?" 17 Ga. St. U. L. Rev. 1063, 1064 (2001) ("Part of the problem with discussing sprawl is agreeing on its definition. An eminent group of researchers who thoroughly surveyed the literature on sprawl for the Federal Transit Administration and the Transportation Research Board of the National Research Council in 1998 concluded that though the term has historically been ill-defined and may have as many as ten elements, 'sprawl development can be characterized . . . as low-density residential and nonresidential intrusions into rural and undeveloped areas,' and '[u]nder sprawl conditions, there is almost total reliance upon the automobile as a means of accessing the individual land uses.' "); see also G. Jolivette, Jr., "*Kelo* v. *City of New London*: A Reduction of Property Rights but a Tool to Combat Urban Sprawl," 55 Clev. St. L. Rev. 103, 105–106 nn.18–20 and related text (2007) (noting problems associated with defining amorphous concept of urban sprawl).